368 So.2d 1273 (1979)
NATIONWIDE INSURANCE COMPANY and Janice W. Duckworth
v.
BANK OF FOREST, FOREST, MISSISSIPPI.
No. 50981.
Supreme Court of Mississippi.
March 28, 1979
*1274 Watkins & Eager, Velia Ann Mayer, Jackson, for appellants.
O.B. Triplett, Jr., Forest, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
PATTERSON, Chief Justice, for the Court.
The Chancery Court of Scott County held the Bank of Forest was entitled to recover $509.56 from Nationwide Insurance Company and Janice W. Duckworth. This is the amount of the bank's lien on an automobile demolished by the negligence of Duckworth.
Both Nationwide and Duckworth appeal, assigning as error the following:
1. The trial court erred in overruling the demurrer of Nationwide and Duckworth.
2. The trial court erred in overruling the pleas of Nationwide and Duckworth.
3. The trial court erred in ordering that the Bank of Forest should recover $509.56 or any amount from Nationwide and Duckworth.
The cause was heard by the chancellor on stipulated facts which are hereinafter summarized.
On August 3, 1976, Burley Wayne Wilhite executed his promissory note for $556.08 to the Bank of Forest. This indebtedness was secured by a lien on Wilhite's 1970 Ford Falcon automobile. Simultaneously therewith, Wilhite, as the owner, filed with the Motor Vehicle Comptroller an application for a title certificate to the automobile. The application listed the bank as first lienholder and thereafter a certificate of title was issued designating Wilhite the owner and the Bank of Forest the first lienholder.
On August 8, 1976, Wilhite's automobile was demolished when it collided with an automobile driven by Janice W. Duckworth who was insured under a policy issued by Nationwide Insurance Company. The negligent acts of Duckworth were conceded to be the proximate cause of the accident. Thereafter Wilhite's attorney filed a claim against Duckworth for all damages accruing to Wilhite from the automobile accident. Following negotiations with Nationwide, Duckworth's insurer, Wilhite accepted settlement for all claims arising from the accident and executed a release to Duckworth and Nationwide on September 5, 1976.
Neither Duckworth nor Nationwide was advised of the bank's lien prior to the settlement and it is stipulated neither had actual knowledge of it. The demolished automobile was delivered to Nationwide by Wilhite as part of the settlement and was sold by it as salvage for $114.95. Nationwide did not obtain a certificate of title from Wilhite to the automobile prior to selling it for salvage.
On October 8 Wilhite executed a renewal of the first note to the Bank of Forest for $564.96, payable in twelve monthly installments of $47.08 each, beginning on November 5, 1976, whereupon the note of August 3, 1976, was cancelled. On November 12, 1976, Wilhite executed an additional note to the Bank of Forest for $75.50. Wilhite neglected to inform the bank upon the execution of these notes that the Falcon automobile had been demolished and that he had accepted settlement for it. He later defaulted on the notes, each of which provided for reasonable attorney's fees for their collection.
The Bank of Forest brought suit against Wilhite for the principal, interest and attorney's fees due under the notes and for a lien to be impressed on the automobile, and prayed a decree be rendered against Duckworth and Nationwide for the principal and interest due under the note of October 8, 1976, and "that the defendant Nationwide be further liable for the wrongful conversion of said automobile to its own use without *1275 respect or regard for the right of complainant." A decree pro confesso and later a final decree were entered against him for the full amount owed the bank, including interest and attorney's fees. A final decree, after hearing, was entered against Nationwide and Duckworth for $509.56, the amount of the bank's lien at the time of the accident.
The trial court's reasoning in awarding recovery to the bank was that the appellants could not assert a release of the appellee's lien because they had made no effort to inspect the certificate of title on the vehicle which would have disclosed the lien or to determine from Wilhite whether his title was subject to a lien or liens under the registration act.
We affirm the judgment of the trial court. A reading of the Mississippi Motor Vehicle Title Law, Chapter 21 [Mississippi Code Annotated sections 63-21-1 through 63-21-77 (1972)] reveals the predominant intention of the legislature by the enactment to establish a source of information concerning the title to motor vehicles and to liens thereon, if any, thereby affording protection to the public, including lending institutions and businessmen in their transactions concerning motor vehicles. For example, Section 63-21-7(3) provides the comptroller shall make available information concerning the status of a title on any vehicle as reflected by the records; Section 63-21-19(4) provides that a certificate of title issued by the comptroller is prima facie evidence of the facts appearing on it; and Section 63-21-55 provides that the methods of perfecting and giving notice of security interest subject to the chapter are exclusive. And see Memphis Bank & Trust Co. v. Pate, 362 So.2d 1245 (Miss. 1978), wherein we held Chapter 21, Motor Vehicle Titles, controls the perfection of a security agreement, meaning that resort need not be made to other statutes to perfect the lien or to give notice thereof.
The stipulation reveals that neither Nationwide nor Duckworth was advised of the bank's lien by Wilhite or his attorney prior to the settlement and neither had actual knowledge of it from any other source. The trial court found that Nationwide made no effort to ascertain the status of the title. We are of the opinion, as was the trial court, that this failure to investigate was not reasonable under the circumstances, leaving both Duckworth and Nationwide liable to the bank because they settled with constructive notice of the bank's lien.
The present factual situation does not permit discussion of the many claims that might arise from minor accidents, "fender benders," which, it is contended, might inundate the motor vehicle comptroller's office with multiple inquiries, thereby disturbing its normal business activities. Moreover, the repair of a vehicle as distinguished from a sale for salvage has the likelihood of maintaining the value of the security and thereby protecting the lien rather than obliterating it. We presently speak only to facts wherein a vehicle was demolished leaving the residue of salvage value only.
The appellants argue, with some logic, that the rules of other jurisdictions should be persuasive to us. The sum of these rules is set forth in 69 Am.Jur.2d, Secured Transactions, section 267 (1972), as follows:
Generally, under pre-Code law a settlement by a wrongdoer with either the chattel mortgagee or the mortgagor, in the absence of fraud or collusion, was a bar to an action by the other, the amount paid being held in trust to be applied according to the respective rights of the mortgagor and the mortgagee. Furthermore, a settlement by a wrongdoer with the mortgagor has been held to be a bar to an action by the mortgagee where actual notice of the mortgagee's interest had been given to the wrongdoer, even where the notice was ignored and left unanswered or where the mortgagee had some other reason to believe that despite the notification, settlement might be made without regard to his rights ... *1276 We acknowledge the rule but do not think it persuasive. The numerous business and credit transactions directly related to motor vehicles are common knowledge. The protection of business through registration of title under the Motor Vehicle Title enactment, in our opinion, outweighs the barring of either a mortgagor or mortgagee from bringing suit against a tort-feasor who has settled with either the one or the other with total disregard for the lien rights of others. We think the very purpose of the Motor Vehicle Title Law was to afford a central place and a designated official so that essential information concerning title to motor vehicles might be readily available to anyone with legitimate needs therefor. It seems to us that ordinary prudence, at the very minimum, would require a cursory investigation of title before an owner was paid the full value of the vehicle, less salvage value, in settlement of a claim. Had this been done both the Bank of Forest and Nationwide would have been protected.
We are of the opinion that Nationwide acted without reasonable prudence in settling with Wilhite without ascertaining the status of the title from the motor vehicle registration statutes. We therefore think the trial court did not err in overruling the demurrer, in overruling the pleas of Nationwide and Duckworth, and in finding that the Bank of Forest should recover $509.56, the amount of its lien.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
LEE, J., took no part.