Harry H. RANIER, Algin Nolan, d/b/a Ranier & Associates, Appellants,

v.

Samuel A. GILFORD, Richard I. Gilford, Ronald M. Gilford, d/b/a Samuel A. Gilford, Co. (Ltd.) a limited partnership, Appellees.

and

SAMUEL A. GILFORD CO. (LTD.), a limited partnership, Cross-Appellant,

v.

Harry H. RANIER, Algin Nolan, d/b/a Ranier & Associates, Cross-Appellees.

Court of Appeals of Kentucky.

Jan. 18, 1985.

Rehearing Denied March 15, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court May 14, 1985.

Tom H. Pierce, Rouse, Rouse, Combs & Pierce, Versailles, for appellants/cross-appellees.

Thomas Bell, James H. Newberry, Jr., Fowler, Measle & Bell, Lexington, for appellees/cross-appellant.

Before HAYES, C.J., and COMBS and WHITE, JJ.

HAYES, Chief Judge:

The only issue with substance raised by appellant is whether Kentucky law, specifically the Uniform Commercial Code—KRS Chapter 355—recognizes a secured creditor's right for wrongful conversion of collateral against the transferee of the original debtor. In this case of first impression in Kentucky, we hold that KRS 355.9–306(2) permits such an action and we therefore affirm the judgment of the trial court.

Appellee, Samuel A. Gilford Company, loaned money to the C & S Construction Company on June 28, 1978. As security for the loan, Gilford obtained a security agreement which covered a list of equipment as collateral for the loan.

The appellant, Ranier & Associates, bought, on March 26, 1979, certain of the items covered by the security agreement from C & S. This was an unauthorized disposition of the collateral. The record is unclear whether or not C & S was in default on the loan to Gilford at this time; however, by the terms of the agreement between C & S and Gilford, there was a default upon the unauthorized sale by C & S to Ranier.

Some time later in 1979, C & S became bankrupt. Gilford, learning of the sale from C & S to Ranier through the bankruptcy proceedings, notified Ranier by letter on April 3, 1980, of its lien on the equipment. A copy of the security agreement and financing statement (filed of record in Kenton County, Kentucky, where C & S Company was domiciled) was enclosed.

Some five months later, in September, 1980, Ranier disposed of the equipment at a dispersal sale held as part of bankruptcy proceedings of an associated company of Ranier. Gilford, undoubtedly because of C & S's bankruptcy and because the equipment was no longer in C & S's possession, sued Ranier for conversion.

The controversy here involves the interpretation of KRS 355.9–306(2) which reads:

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any indentifiable proceeds including collections received by the debtor.

The 1972 "official" comment to the Uniform Commercial Code, 3 ULA–UCC pages 441–442 reads:

3. In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him *or in an appropriate case maintain an action for conversion.*

Subsection 2 codified this rule. (Emphasis added.)

It is clear from the evidence in this case that the disposition by the debtor (C & S) was unauthorized. We believe this to be "an appropriate case" for the secured party (Gilford) to maintain an action for conversion against the transferee (Ranier), especially since the property is in the possession of neither the original debtor nor its transferee, Ranier, and since C & S is bankrupt.

The Banks-Baldwin edition of the Kentucky Revised Statutes lists a 1983 "Kentucky Commentary" as stated above in 3 ULA–UCC pages 441–442. Although this "Kentucky Commentary" is apparently not "official," we see no reason why it should not be adopted. As the appellee Gilford states in his brief, other jurisdictions recognize the necessity of allowing secured parties to prosecute conversion actions where the disposition of the collateral by the debtor is unauthorized. *White-Sellie's Jewelry Co., Inc. v. Goodyear Tire & Rubber Co.,* 477 S.W.2d 658 (Tex.1972); *Chemical Bank v. Miller Yacht Sales,* 173 N.J.Super. 90, 413 A.2d 619 (1980).

In *Ashland Finance Co., Inc. v. Mollett,* 252 Ky. 491, 67 S.W.2d 717 (1934), Mollett bought a truck and financed it through Ashland Finance. After defaulting on the loan for not making the required monthly payments, Mollett sold the truck to Ward who received a bill of sale stating the truck was free of any encumbrances. Ashland Finance located the truck in possession of Ward and made demand for its return. The former Court of Appeals determined that Ward's refusal to surrender the truck when demand for it was made by Ashland Finance was a conversion by Ward from and after that date. We find nothing in Chapter 355 of the Kentucky Revised Statutes that would require a different result.

Appellant cites *Commercial Credit Corp. v. W.E. Caldwell Co.,* Ky., 279 S.W.2d 803 (1955), for the proposition that Kentucky does not recognize an action by a secured party for conversion. *Commercial Credit Corp.* does not support appellant's contention. That case was a dispute between two creditors, one of which was claiming title by virtue of an oral conditional sales agreement. The court merely held as between creditors, the creditor with the perfected lien had priority over the other creditor with an unperfected lien.

Professors White & Summers in their treatise on the U.C.C., *Handbook of the Law under the Uniform Commercial Code* (2d ed. 1980), at page 1103 state:

> The creditor's suit against the debtor for possession of the collateral is relatively simple. However, the situation becomes more complex when the collateral has been transferred to a third party. Assuming that such transfer constituted a default, then under the mandate of 9–201 and 9–306(2) the security agreement is enforceable against third persons unless one of many exceptions come into play (citations omitted). If the purchaser cannot bring himself under one of the exceptions to 9–201 and 9–306, then under the provisions of 9–503 the secured party has a superior right to possession of the collateral. In that case the secured party can successfully pursue a suit for conversion or seek to replevy the collateral.

Here, the transfer was unauthorized; it constituted a default; Ranier does not fall under one of the exceptions to KRS 355.9–201 or KRS 355.9–306; Gilford had the right to possession, and could pursue his claim for conversion against Ranier.

Ranier's argument that the trial court abused its discretion by not allowing an amended answer to be filed fails because the record contains an amended answer filed by Ranier asserting the defenses of waiver and estoppel. This amended answer was filed with the trial court long before the case was submitted for a decision.

Gilford, in a cross-appeal, complains that the trial court did not allow all costs and expenses incurred by Gilford in the collection of the obligations of the original debtor, C & S. Gilford is seeking out-of-pocket expenses plus attorney fees.

There is no disagreement with Gilford's contention as it relates to C & S, the original debtor. The question is whether that right, supported contractually by the agreement between Gilford and C & S and by the provisions of KRS 453.250 and KRS 355.9–504(1)(a), can be extended against Ranier, who was not a party to the agreement nor a defaulting debtor under KRS 453.250 (repealed and re-enacted as KRS 411.195, effective July 13, 1984) or KRS 355.9–504(1)(a).

Gilford was awarded $45,424.19 plus interest at a per diem rate of $8.80 per day from August 12, 1983 to August 17, 1983, plus 12% interest on judgment from August 17, 1983 until satisfied.

■ Gilford admits the award to it cannot exceed its security interest even though less than the reasonable value of the property at the time it was taken by Ranier. Gilford's own proof established its interest at $51,637.58. However, this amount included $7,018.15 for attorney fees which the trial court did not allow and we do not allow. Deducting the attorney fees from the security interest leaves an amount of $44,619.43, which is less than that awarded by the trial court and, from the record, we cannot and do not explain the apparent discrepancy. In any case Ranier does not complain about this discrepancy, and Gilford received more than asked for except for attorney fees.

*Riley v. West Kentucky Production Credit Assoc.,* Ky.App., 603 S.W.2d 916 (1980), held that a recovery of attorney fees on a suit for collection on a note, even if the provisions of the note therefor was not appropriate. However, the underlying basis for *Riley,* public policy, has since been eroded by the Kentucky Legislature with the enactment of KRS 453.250, effective July 15, 1980, (repealed, re-enacted and amended effective July 13, 1984, as KRS 411.195).

This statute would permit recovery of attorney fees here, except for the fact that the present case is not based upon a suit to collect a debt owed by a debtor to the creditor but is one for the tort of conversion. On that score the case of *Motors Insurance Corp. v. Singleton,* Ky.App., 677 S.W.2d 309 (1984) is dispositive. As the court there stated, attorney fees incurred in recovering possession of the property are compensable; attorney fees incurred as a result of the conversion litigation are not recoverable.

The judgment of the trial court is affirmed.

All concur.