[No. 6611–8–III.   Division Three.   November 19, 1985.]

INTERNATIONAL HARVESTER CREDIT CORPORATION, *Appellant,* v. SANTIAGO VALDEZ, ET AL, *Respondents.*

*Robert M. Boggs* and *Lyon, Beaulaurier, Weigand, Suko & Gustafson,* for appellant.

*Jerry J. Moberg* and *Ries & Kenison,* for respondents.

MUNSON, J.—International Harvester Credit Corporation (International) appeals a summary judgment in favor of Santiago Valdez.[1] The sole issue is whether the holder of a security interest in a motor vehicle is barred from bringing suit against a tortfeasor, who had destroyed the secured vehicle, after the tortfeasor's settlement with the registered owner. We answer in the affirmative.

In 1980, David Valle purchased a used truck tractor and potato bed for $14,375.84. He made a substantial down payment and received a trade–in allowance; the remainder of the purchase price was financed by the seller, who assigned the contract to International. Valle was to make four payments, due in July and December 1981 and 1982 respectively. International's perfected security interest was shown on the certificate of title. *See* RCW 62A.9–302; RCW 46.12.095.

In October 1981, the tractor was involved in a collision with a truck owned by Santiago Valdez and driven by his employee. The tractor was apparently damaged beyond repair. Valdez's insurance carrier paid Valle approximately $14,000 in full settlement of his property damage claim. Neither Valdez nor his insurance carrier had actual knowledge of the security interest; neither contacted the Depart-

---

[1]Jane Doe Valdez was also a named defendant. For convenience, Santiago Valdez will be referred to as if he were the sole defendant.

ment of Licensing to examine the certificate of title.

Valle failed to make the 1982 payments, totaling approximately $4,000. International first learned of the accident and settlement when it began its collection effort.

International commenced this action against Valdez for the damages to its security interest. The trial court granted summary judgment for Valdez, stating: (1) Valdez had no duty to protect International's security interest and (2) International's suit was barred by Valdez's settlement in full with Valle. International appeals.

We assume arguendo that Valdez was responsible for the 1981 accident. Initially, both the debtor and secured party have a cause of action against the tortfeasor who damages the secured property. RCW 62A.2-722;[2] *Stotts v. Puget Sound Traction, Light & Power Co.*, 94 Wash. 339, 162 P. 519 (1917); 69 Am. Jur. 2d *Secured Transactions* § 266, at 95-96 (1973); Annot., *Recovery by Conditional Seller or Buyer, or Person Standing in His Shoes, Against Third Person for Damage or Destruction of Property*, 67 A.L.R.2d 582 (1959). *See also Muscatel v. Storey*, 56 Wn.2d 635, 354 P.2d 931 (1960); *Sanborn v. Brunswick Corp.*, 2 Wn. App. 248, 467 P.2d 219 (1970) (secured party cause of action for conversion).

In *Stotts v. Puget Sound Traction, Light & Power Co.*, *supra*, the court noted a tortfeasor with actual notice of

---

[2]RCW 62A.2-722 provides:

"Who can sue third parties for injury to goods. Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract

"(a) a right of action against the third party is in either party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods; and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other;

"(b) if at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no arrangement between them for disposition of the recovery, his suit or settlement is, subject to his own interest, as a fiduciary for the other party to the contract;

"(c) either party may with the consent of the other sue for the benefit of whom it may concern."

security interest in the damaged property could protect himself by bringing in the secured party as an additional party. However, the court went on to hold the secured party had waived his right to recover by appearing as a witness on the debtor's behalf and not seeking to formally intervene. Neither *Stotts* nor articles 2 and 9 of the Uniform Commercial Code speak to whether a settlement between the debtor and tortfeasor releases the tortfeasor from liability to the secured party. *See* 69 Am. Jur. 2d *Secured Transactions* § 267, at 97 (1973); Weinberg, *Secured Party's Right To Sue Third Persons for Damage to or Defects in Collateral,* 81 Com. L.J. 445 (1976).

The majority rule is that only one cause of action arises out of the tortfeasor's misconduct; therefore settlement in full between the tortfeasor and debtor for all property damage, absent fraud or collusion, bars a subsequent suit by the secured party. *E.g., Universal Credit Co. v. Collier,* 108 Ind. App. 685, 31 N.E.2d 646 (1941); *Miller v. Hortman–Salmen Co.,* 145 So. 786 (La. Ct. App. 1933); *Motor Fin. Co. v. Noyes,* 139 Me. 159, 28 A.2d 235 (1942); *Commercial Sec., Inc. v. Mast,* 145 Or. 394, 28 P.2d 635, 92 A.L.R. 194 (1934); *Johnson v. Wright,* 280 S.C. 535, 313 S.E.2d 343 (Ct. App. 1984); *Universal C.I.T. Credit Corp. v. Trapp,* 232 S.C. 297, 101 S.E.2d 829 (1958); *Farmers & Merchants Bank & Trust Co. v. Jennings,* 90 S.D. 422, 241 N.W.2d 715 (1976); *Ellis v. Snell,* 44 Tenn. App. 294, 313 S.W.2d 558 (1955). *Accord, Mercer v. New Amsterdam Cas. Co.,* 211 N.C. 288, 189 S.E. 762 (1937).

International vigorously argues the certificate of title constituted constructive notice to Valdez of its security interest. Thus, Valdez had a duty to notify International of the accident, and include it as a party to any settlement of the claim.

*Nationwide Ins. Co. v. Bank of Forest,* 368 So. 2d 1273 (Miss. 1979) supports International's position. There it was held the tortfeasor's insurer acted without reasonable prudence when it settled with the owner of the other vehicle without first checking the certificate of title. Therefore, the

secured party was entitled to maintain an action, subsequent to the settlement, against the tortfeasor and her insurer to recover the amount of its lien. The court reasoned the purpose of the Mississippi Motor Vehicle Title Law was to establish a central source of information regarding motor vehicle titles, affording protection to the public, including secured parties. The court referred to statutes which provide the certificate of title constitutes prima facie evidence of the facts appearing on it, and that notation on the certificate of title is the exclusive method of perfecting a security interest.

*Nationwide,* at page 1276, rejected the majority rule, stating:

> We acknowledge the rule but do not think it persuasive. The numerous business and credit transactions directly related to motor vehicles are common knowledge. The protection of business through registration of title under the Motor Vehicle Title enactment, in our opinion, outweighs the barring of either a mortgagor or mortgagee from bringing suit against a tort–feasor who has settled with either the one or the other with total disregard for the lien rights of others. We think the very purpose of the Motor Vehicle Title Law was to afford a central place and a designated official so that essential information concerning title to motor vehicles might be readily available to anyone with legitimate needs therefor. It seems to us that ordinary prudence, at the very minimum, would require a cursory investigation of title before an owner was paid the full value of the vehicle, less salvage value, in settlement of a claim. Had this been done both the Bank of Forest and Nationwide would have been protected.

However, the court restricted its holding to cases where the collateral has been destroyed:

> The present factual situation does not permit discussion of the many claims that might arise from minor accidents, "fender benders," which, it is contended, might inundate the motor vehicle comptroller's office with multiple inquiries, thereby disturbing its normal business activities. Moreover, the repair of a vehicle as distinguished from a sale for salvage has the likelihood of

maintaining the value of the security and thereby protecting the lien rather than obliterating it. We presently speak only to facts wherein a vehicle was demolished leaving the residue of salvage value only.

*Nationwide,* at 1275. *Accord, Commercial Sec., Inc. v. Mast, supra* (dicta).

■ ■ We adopt the majority rule for the following reasons. First, the purpose of the certificate of title act is to protect secured parties as those parties are identified and defined in the Uniform Commercial Code. *See* RCW 46.12-.005; RCW 46.12.095 (procedure for protecting security interest in motor vehicle). Official Comment 1, RCWA 62A.9–303, states that the result of perfecting a security interest is that the secured party is protected against *creditors, transferees,* and creditors' representatives in insolvency. Tortfeasors are not among those given record notice of properly perfected security interests. *Accord, Johnson v. Wright,* 313 S.E.2d at 345; *Motor Fin. Co. v. Noyes, supra; Miller v. Hortman–Salmen Co., supra.*

Second, RCW 62A.2–722 contemplates one settlement in which the settling party holds the proceeds in trust for the secured party to the extent of the outstanding obligation. The underlying rationale is that the debtor has the right to possession and is entitled to recover the full amount of damage. Thus, a tortfeasor would not necessarily have a duty to join the secured party even if he had actual notice of the security interest. *Stotts v. Puget Sound Traction, Light & Power Co., supra; Universal Credit Co. v. Collier, supra; Johnson v. Wright, supra; Universal C.I.T. Credit Corp. v. Trapp, supra; Farmers & Merchants Bank & Trust Co. v. Jennings, supra. But cf. Miller v. Hortman–Salmen Co., supra; Commercial Sec., Inc. v. Mast, supra* (where tortfeasor's insurer assured secured party that settlement would not affect his rights, tortfeasor estopped from raising settlement with debtor as bar to subsequent action by secured party). This comports with the common law of bailment and the public policy favoring compromise and settlement.

In applying the above concepts to the facts presented here, we conclude the tortfeasor, Valdez, did not owe any duty to the secured party, International. First, International's perfection of its security interest in the tractor did not provide Valdez or his insurer with notice of that interest. Neither Valdez nor his insurer was required to ascertain whether there were any liens upon Valle's tractor prior to the settlement of the claim. Official Comment 1, RCWA 62A.9–303; *Johnson v. Wright,* 313 S.E.2d at 345. Moreover, International's contract does not obligate Valle to give the secured party notice of any damage to the collateral. International is seeking to impose a higher duty upon Valdez than it imposed upon its own debtor, Valle.

Second, Valle and not International was in possession of the tractor at the time the accident occurred. Valle was not in default and, in fact, made one payment after the accident. Valdez's wrongful act created only one cause of action for property damage, and Valle as vendee was entitled to recover for the full value of the damage. *Universal Credit Co. v. Collier, supra; Ellis v. Snell, supra;* RCW 62A.2–722.

The judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.