STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,
Appellant,

v.

CHRYSLER CREDIT CORPORATION
and Day's Auto Parts, Inc., Appellees.

and

CHRYSLER CREDIT CORPORATION,
Cross–Appellant,

v.

STATE AUTOMOBILE MUTUAL IN-
SURANCE CORPORATION and
Day's Auto Parts, Inc., Cross–Appellees.

and

DAY'S AUTO PARTS, INC.,
Cross–Appellant,

v.

STATE AUTOMOBILE MUTUAL INSUR-
ANCE COMPANY and Chrysler Credit
Corporation, Cross–Appellees.

Nos. 89–CA–0360–MR, 89–CA–0534–MR
and 89–CA–0591.

Court of Appeals of Kentucky.

July 6, 1990.

Benjamin Cowgill, Landrum & Shouse, Lexington, for State Auto. Mut. Ins. Co.

Thomas W. Miller, Miller, Griffin & Marks, PSC, Lexington, for Chrysler Credit Corp.

Herman M. Dayton, Dayton & Associates, Lexington, for Day's Auto Parts, Inc.

Before HAYES, McDONALD and MILLER, JJ.

MILLER, Judge.

These appeals spring from a judgment entered by the Fayette Circuit Court upon bench trial. The issues presented are of considerable interest and initial impression. They concern the liability of a third-party tort-feasor's insurance carrier to a security lienholder on an automobile when the vehicle is destroyed and the carrier has chosen to settle with the owner and take possession of the salvage without recognition of the lienholder's interest.

The facts are these: Chrysler Credit Corporation (Chrysler Credit) financed a 1986 Plymouth Colt automobile for Levon A. Morton pursuant to a Retail Installment Contract and Security Agreement. Notice of Chrysler Credit's security interest was duly made by recordation as required by our Uniform Commercial Code (UCC). Kentucky Revised Statutes (KRS) Chapter 355. Further, Morton's title certificate contained a notation of Chrysler Credit's lien as required by KRS 186A.190 (Automated Motor Vehicle Registration System.) According to the financing arrangements with Chrysler Credit, Morton was to obtain collision insurance on the vehicle with a loss-payable clause to Chrysler Credit. Apparently, Morton did obtain such coverage, but later failed to pay premiums causing a lapse of coverage. Apparently, Chrysler Credit did not independently insure its interest.

On March 6, 1987, the Plymouth Colt was involved in a collision with a vehicle owned by Ernest Lee Bryant and insured by State Automobile Mutual Insurance Company (State Auto). The Plymouth Colt was totally destroyed. State Auto, admitting the fault of its insured, issued a check to Morton for $5,801.25, being the total value of the Plymouth Colt, and took possession of the salvage valued at $1,215.50. In conformance with a prior arrangement for disposal of salvageable vehicles, State Auto delivered the salvage to Day's Auto Parts, Inc. (Day's). Day's sold the salvage to another (not a party to these proceedings)

who caused the Plymouth Colt to be repaired at a cost of $2,500.00.[1] It appears State Auto never made application for a "salvage title" pursuant to KRS 186A.335. As the vehicle passed from party to party, each was assured that title would be forthcoming. However, Morton disposed of the settlement proceeds, defaulted on the contract to Chrysler Credit, declared bankruptcy, and failed to deliver title papers to anyone.

On April 8, 1988, Chrysler Credit sued State Auto and Day's seeking damages for their joint and several acts affecting its security. State Auto and Day's cross-claimed against each other. The trial court awarded Chrysler Credit judgment against State Auto on the theory of conversion. State Auto brings this appeal against both Chrysler Credit and Day's. Each appellee cross-appealed. Kentucky Rules of Civil Procedure (CR) 74.

The trial court found State Auto's acts constituted a conversion and awarded Chrysler Credit damages against State Auto in the amount of $5,801.25, being the total value of the vehicle. The court further ordered Chrysler Credit to release its lien, with the Plymouth Colt becoming the exclusive property of Day's. The court reasoned that the conversion occurred at the time State Auto issued the settlement check to Morton and took possession of the salvage. The holding was predicated upon certain well-known rules: (1) that conversion is the wrongful exercise of dominion and control over property of another (*Illinois Central R. Co. v. Fontaine*, 217 Ky. 211, 289 S.W. 263 (1926)); (2) that conversion is essentially a tort action, but the tort may be waived in favor of a contract action (*Peoples Nat'l Bank v. Guier*, 284 Ky. 702, 145 S.W.2d 1042 (1940); (3) that the measure of damages in conversion is the value of the property at the time of conversion (*Nolin Prod. Credit v. Canmer Deposit Bank*, Ky.App., 726 S.W.2d 693 (1986)); and (4) that neither motive, intent, nor good faith is material to the action. *Urban v.*

1. When the present controversy began, Day's repurchased the repaired vehicle and now holds

same pending final disposition.

*Lansing's Adm'r,* 238 Ky. 218, 39 S.W.2d 219 (1931). The holding was further buttressed upon our holding in *Ranier v. Gilford,* Ky.App., 688 S.W.2d 753 (1985), wherein a suit for conversion was authorized against the transferee of collateral having actual knowledge of a lien, notwithstanding the transferee had subsequently sold the property and was no longer in possession.

Finally, the trial court took cognizance of KRS 355.9–306(1), (2), (3)[2] which provides that insurance payable for the loss of collateral is considered proceeds from the collateral and the security interest of the creditor continues therein.

■ This brings us to the central issue for our decision, but before entering this discussion, we note it is argued by State Auto and Day's that Chrysler Credit's complaint does not adequately allege conversion. In this regard, we observe that while the complaint is somewhat lacking, it does allege a clear security interest on behalf of Chrysler Credit and default on the part of Morton, the debtor. Further, it alleges that the Plymouth Colt was subsequently acquired by State Auto and delivered to Day's, with its present whereabouts being unknown. Finally, it alleges that the vehicle is being wrongfully withheld. We deem these allegations sufficient to assert conversion. *See Commercial Credit Corp. v. Tackett,* Ky., 249 S.W.2d 43 (1952).

■ Turning to the chief issue, we think it indisputable that both State Auto and Day's converted the salvage. Both had constructive notice of Chrysler Credit's lien. We do not wish to distinguish between actual and constructive notice, and therefore deem *Ranier v. Gilford,* 688

S.W.2d at 753, controlling. In accordance with *Nolin Prod. Credit v. Canmer Deposit Bank,* 726 S.W.2d at 693, an award in favor of Chrysler Credit against State Auto for the value of the Plymouth Colt at the time of conversion would have been appropriate. Upon remand, the court shall so enter.

The prime matter of concern is the question of State Auto's converting the damage proceeds by delivering the check directly to Morton in disregard of Chrysler Credit's security-interest lien. Having considered authorities (discussed below) from other jurisdictions, we conclude this holding by the trial court was erroneous. The authorities are divided.

In *Nationwide Ins. Co. v. Bank of Forest,* 368 So.2d 1273 (Miss.1979), the Mississippi court imposed liability upon a third-party tort-feasor's insurance carrier which settled with the debtor in disregard of a secured party's interest. In that case, the debtor's automobile, the title of which listed the secured party's lien, was damaged in an accident. The negligent driver's insurance carrier settled with the debtor, disregarding the lienholder's interest, and acquired the damaged vehicle for salvage. The insurance company did not obtain a Certificate of Title for the salvage. The Court acknowledged an understanding of a contrary rule, but reasoned that business credit arrangements involving automobiles are of common knowledge and that the requirement of the lien notice on the Certificate of Title serves the purpose of protecting insurance carriers wishing to make payment on damaged automobiles.

We turn now to cases from two jurisdictions rejecting the idea of imposing liability

---

**2.** "PROCEEDS"—SECURED PARTY'S RIGHTS ON DISPOSITION OF COLLATERAL.—(1) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts and the like are "cash proceeds." All other proceeds are "non-cash proceeds."

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless:

.    .    .    .    .

upon a third-party tort-feasor's carrier for making payment to the owner of the vehicle in disregarding of a perfected security interest. At the outset, we observe that this view is in conformance with the pre-UCC law that in absence of fraud or collusion, settlement by a wrongdoer may be made to either the owner (mortgagor) or the security holder (mortgagee) with impunity as the one receiving payment must hold the funds in trust for application according to the respective rights of the mortgagor and mortgagee. 69 Am.Jur.2d *Secured Transactions* § 267 (1973).

In the case of *International Harvester v. Valdez*, 709 P.2d 1233, 42 Wash.App. 189 (1985), International Harvester (IH) financed a tractor for Valle. IH's lien was duly recorded on Valle's Certificate of Title. The tractor was totally destroyed in an accident with a vehicle owned by Valdez. The latter's insurance carrier paid Valle for total loss. Neither Valdez nor his carrier examined Valle's Certificate of Title. Later, IH sued Valdez for damage to its security interest. IH was denied recovery. The Court reasoned, in conformance with pre-UCC rule, that a tort-feasor is entitled to one settlement and that the settling party holds the proceeds in trust for the secured party. It further reasoned that the purpose of perfecting a security interest is protection of the secured party against creditors, transferees and creditors' representatives in insolvency, and a tort-feasor is not within the class of those subject to record notice. The Court concluded that neither Valdez nor his insurer was obligated to check for liens against Valle's property before settlement.

The Kansas case of *Scholfield Bros., Inc. v. State Farm Mut. Auto. Ins. Co.*, 752 P.2d 661, 242 Kan. 848 (1988), followed the ruling of *International Harvester*. In *Scholfield Bros.*, an automobile, owned and driven by Parrish, collided with an automobile owned and driven by Clafer. The Clafer car was "totalled." Parrish was at fault. Clafer's car was uninsured. State Farm Mutual Automobile Insurance Company (State Farm) was the liability carrier on Parrish. State Farm paid Clafer total damage for his vehicle and received assign-

ment of the vehicle and title. The title showed General Motors Acceptance Corporation (GMAC) as having a security interest in the Clafer vehicle. State Farm tried unsuccessfully to get GMAC to release the security lien, after which it returned title to GMAC. Ultimately, Clafer defaulted in payments to GMAC, and the latter reassigned to Scholfield Brothers, Inc. (Scholfield Bros.), the dealer. Scholfield Bros. sued State Farm on the theory of conversion for having settled with the debtor, Clafer, in disregard of its security interest. The Kansas Court denied recovery citing both the Mississippi case of *Nationwide Ins. Co.*, 368 So.2d at 1273, as the minority view, and the Washington case of *International Harvester*, 709 P.2d at 1233, as the majority view on the issue.

Our research has failed to find sufficient cases upon which to predicate a majority or minority view. Nevertheless, we choose to adopt the view of the Kansas Court and follow *International Harvester*. It seems to us that neither the UCC nor sound public policy warrants an elevation of security interests above the good to be gained from quick settlement by wrongdoers for damage done to fellow citizens. A requirement that a wrongdoer or his insurance carrier become embroiled in satisfaction of security liens would, in our view, have a chilling effect on prompt settlements. Moreover, the UCC's provision that proceeds become collateral and subject to the security lien is sufficient protection for a lienholder which, in the first instance, chose his debtor.

We therefore hold that State Auto's act of receiving the salvage was an act of conversion, but the payment to Morton for damage was not. On remand, judgment shall be entered for Chrysler Credit against State Auto in an amount representing the salvage value of the Plymouth Colt which we deem to be in the approximate sum of $1,215.50. We affirm the trial court's ordering of Chrysler Credit to release the lien against the Plymouth Colt upon payment of this judgment, with ownership of the vehicle to Day's Auto.

For the foregoing reasons, the judgment of the circuit court, on Appeal No. 89–CA–

0360–MR, is affirmed in part, reversed in part and remanded with directions to enter judgment in accordance with this opinion. Cross–Appeal Nos. 89–CA–0534–MR and 89–CA–0591–MR are affirmed.

McDONALD, J., concurs.

HAYES, J., dissents.

HAYES, Judge, dissenting:

I respectfully dissent. I believe the trial court correctly decided this case based upon Kentucky Revised Statutes 355.9–306(1) and (2) and the case of *Ranier v. Gilford,* Ky.App., 688 S.W.2d 753 (1985).

As between Chrysler Credit and State Auto, the wrongdoer is clearly State Auto which paid Morton at its peril. State Auto's claim, if any, is against Morton. To hold otherwise would mean valid, perfected security interests are not worth much. I would affirm the judgment of the trial court in all respects.