**FIDELITY FINANCIAL SERVICES, Appellant,**

v.

**Gary W. BLASER and Debbie L. Blaser a/k/a Debbie Underwood; Bertha Walcott; Defendants,**

**Trader's Insurance Company, Appellee.**

No. 79988.

Supreme Court of Oklahoma.

Dec. 20, 1994.

Rehearing Denied Feb. 22, 1995.

Steven M. Ditto, Del City, for appellant.

James Hill, Lewis & Hill, and Stephen Peterson and C. Todd Ward, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee.

HARGRAVE, Justice.

The Defendants Gary Blaser and Debbie Blaser, aka Debbie Underwood, ("Borrowers") signed a promissory note and security agreement in favor of Fidelity Financial Services (Lender) for the purchase of a 1987 Nissan Maxima automobile. Lender perfected its security interest by filing a lien entry form with the Oklahoma Tax Commission on November 21, 1990. On or about May 24, 1991, the Nissan automobile was damaged as a result of an accident with defendant Bertha Walcott.

Walcott's liability insurance carrier, Trader's Insurance Company, negotiated the property damage claim with Debbie Blaser and paid her approximately $8,000 for the damage to the Nissan automobile as a result of the collision with Trader's insured. Trader's caused the Nissan automobile to be stored with a third party for repairs. Subsequently Trader's learned of Lender's interest and sought a release of lien. This was the first time that Lender learned of damage to its collateral. Lender refused to release the lien and Trader's abandoned the vehicle, which was sold to foreclose the garageman's lien. At the time of the sale, the Blasers owed Lender $5,846.06. The Blasers did not pay Fidelity Financial Services with the money received from Trader's Insurance Company for destruction of the automobile.

Lender sued, alleging 1) that Trader's had interfered with its collateral by allowing storage and repair charges to be assessed against the vehicle and failing to pay for storage and for repairs to the vehicle; 2) that Trader's, although on notice of Lender's lien, failed to obtain a release of lien from Lender, but instead caused storage charges and repair charges to be assessed against the vehicle in slander of plaintiff's security interest. Lender also argued that it was the beneficiary of any contract between Trader's and borrowers regarding the collateral. Lender's claim was for $6,640.00 in damages, that being the amount of the possessory lien held by the garageman, plus costs and attorney fees. Trader's asserted defenses of accord and satisfaction, estoppel, laches, payment and release and waiver. Trader's asserted that plaintiff only was entitled to salvage value of the automobile, if anything, under Oklahoma's U.C.C.

Trader's Insurance Company moved for summary judgment, arguing that it had no duty to protect Lender's security interest, and alleging further that there were no contractual obligations between Lender or borrowers and Trader's or tortfeasor to which Lender could be a third-party beneficiary.

Trader's noted that 12A O.S.1991 § 9–306 [1] provides that insurance payments are "proceeds" and that the section provides only for continuance of a security interest in proceeds. They argued that section 9–306 did not create a duty on the part of a tortfeasor's insurance company to ascertain the existence of a lender's security interest, but merely provided a mechanism to track the secured interest and recover from the debtor or the debtor's transferee.

In response to Trader's motion for summary judgment, Lender did not argue that there were facts in dispute, but argued only that jurisdictions were split on whether a duty is owed by a third party to protect a secured party's interest, citing in support of its position a 1933 Louisiana case, a 1934 Oregon case, and a 1979 Mississippi case. The only issue presented to the trial court on summary judgment was whether Trader's had any legal duty to protect the secured party's interest. The trial court found no substantial controversy as to any material fact and rendered judgment for Trader's Insurance Company as a matter of law.

Lender appealed, raising only two issues: 1) that Trader's had a duty under statutory and case law to satisfy Lender's lien prior to or simultaneous with its payment to borrowers, and 2) that Trader's had a duty as a matter of public policy to satisfy liens of record of which it has notice prior to the taking of title to collateral. Lender's brief for the first time asserted that such duty arises under Title 12A O.S. § 9–306 and that summary judgment should be granted to Lender as a matter of law. The Court of Appeals reversed the summary judgment granted to Trader's and directed that judgment be entered for Lender, although Lender had not moved for summary judgment in

the trial court. The Court of Appeals based its decision on 12A O.S.1991 § 9–306.

Although Lender states in its brief-in-chief that the basis for the appeal is that insurer is liable to Lender *both* for not protecting its interest in the proceeds when it issued payment solely to the debtor *and* for failure to protect its interest in the salvaged vehicle by allowing it to be sold to satisfy the garageman's lien, the only issue presented on appeal was whether Trader's had a duty to satisfy Lender's lien prior to or simultaneous with its payment to borrower and prior to taking title to the collateral. For the reasons set out below, we find that Trader's did not have a duty in this instance to protect Lender's security interest.

The Security Agreement covering the vehicle required the borrowers to keep the security insured against loss by fire, theft and collision, and borrowers agreed that neither loss of, nor injury to the security would relieve their obligation on the note and security agreement. The security agreement did not require borrowers to notify Lender of damage to or loss of the vehicle.

A number of the cases cited by Lender are premised on conversion, which was not advanced as a theory of recovery in the case at bar. See, *for example, Farmers & Merchants Nat'l Bank v. Fairview State Bank, 766 P.2d 330 (Okla.1988)* an action for conversion where the dispute was between competing creditors, which held that a security interest in payment-in-kind benefits remained continuously perfected as proceeds of collateral. In the case at bar, the secured party sued a third-party insurance company for recovery of storage and repair charges assessed against the vehicle. The case at bar is not one for recovery of the proceeds in the hands of the borrowers. (The borrowers

---

1. Title 12A O.S.1991 § 9–306(1) provides:

   "(1) 'Proceeds' includes whatever is received upon the sale, exchange collection or other disposition of collateral or proceeds. Insurance payable from any source by reason of loss or damage to the collateral is proceeds, even though such insurance payments may be made by third party tort-feasor or their insurers, except to the extent that it is payable to a person other than a party to the security agreement ..."

   Title 12A O.S. § 9–306(1) was amended by Laws 1994, Ch. 342 § 17, effective September 1, 1994. and now reads:
   "(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds including, but not limited to, payments from a third party tortfeasor or his or her insurer. Insurance payable from any source by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement ..."

were named as parties to the suit but were not served). We do not consider Lender's conversion arguments because they were not raised in the trial court. *See, Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230 (Okla.1989).

It has been held that only one cause of action arises out of a tortfeasor's misconduct and that settlement in full between the tortfeasor and debtor for all property damage, absent fraud or collusion, bars a subsequent suit by the secured party. *See, International Harvester Credit Corp. v. Valdez,* 42 Wash.App. 189, 709 P.2d 1233, 1235 (1985) *and cases cited therein.* The sole issue in *Valdez* was whether the holder of a security interest in a motor vehicle was barred from bringing suit against a tortfeasor who had destroyed the secured vehicle, after the tortfeasor had settled with the registered owner. The court held the suit was barred, adopting what it considered the majority view.

*Valdez* reasoned that the purpose of the certificate of title acts was to protect secured parties against creditors, transferees and creditors' representatives in insolvency. Because the debtor has the right to possession, subject only to its obligation to fulfill the terms of the security agreement, the debtor was entitled to recover the full amount of damage. Thus, a tortfeasor would not necessarily have a duty to join the secured party in the settlement, even if he had actual notice of the existing security interest. They noted that the security agreement did not obligate the debtor to give the secured party notice of any damage to the collateral; thus, the secured party was seeking to impose a higher duty on the tortfeasor than it had imposed upon its own debtor. Lastly they noted that the debtor was in possession of the vehicle at the time the accident occurred and was not then in default.

In *Scholfield Brothers, Inc. v. State Farm Mut. Auto. Ins. Co.,* 242 Kan. 848, 752 P.2d 661 (1988), the secured creditor sued third-party tortfeasor's liability insurer for conversion, seeking payment of the balance owed by the borrowers. The insurance carrier had settled with the owner of the vehicle and received an assignment of the vehicle and title thereto from the borrower. The lend-er's lien was noted on the title. The insurance company sought a release of lender's lien and lender refused, so the title was returned to lender. Trial court granted summary judgment against insurer on theory that insurer's acts constituted conversion of lender's security interest. The Kansas Supreme Court rejected the conversion theory, finding no basis therefor, and rejected the argument that under Kansas' Commercial Code, § 9–306 the proceeds were improperly paid to the debtor. The court found that issue to be without merit, noting that § 9–306 would authorize the secured party to track the insurance proceeds paid to the debtor and recover them from the debtor. They reasoned that § 9–306 does not require the payer of proceeds to pay a second time. *See also, Chrysler Credit Corp. v. Smith,* 434 Pa.Super. 429, 643 A.2d 1098 (1994) which held that an insurer that never took title to the damaged vehicle and disbursed proceeds according to the insurance policy was not guilty of converting collateral or the proceeds thereof in an action in conversion brought against it by secured creditor, and *State Automobile Mutual Insurance Co. v. Chrysler Credit Corp., et al.,* 792 S.W.2d 626 (Ky.App. 1990), noting that while an insurer might convert a salvaged vehicle by taking possession of it and thereafter disposing of it, the disbursement of a settlement check should not, as a matter of public policy, subject the insurer to liability.

We agree with the reasoning of the above cases. The view urged by Lender was adopted in *Nationwide Ins. Co. v. Bank of Forest,* 368 So.2d 1273 (Miss.1979), wherein the court felt that the purpose of the motor vehicle title acts was to afford a central place and a designated official so that essential information concerning vehicle titles might be readily available. They reasoned that ordinary prudence would require a cursory investigation of title before an owner was paid the full value of the vehicle in settlement of a claim.

Also contra is *First National Bank of Bethany v. American General Fire and Cas. Co.,* 927 F.2d 1126 (10th Cir.1991) which held that an insurance payment became proceeds of collateral when the settlement became

"payable", before actual receipt by debtor, and that thus the insurer's payment of funds to debtor, contrary to the perfected security interest of which insurer had constructive notice, amounted to conversion.

We also note that the issue of Trader's duty to protect Lender's security interest arising under 12A O.S. § 9–306 was raised by Lender for the first time on appeal, and only after Trader's had argued on summary judgment that section 9–306 did not create any duty on its part. In any event, we do not perceive that § 9–306 creates a duty on the third-party tortfeasor's insurance company in this case to protect Lender's security interest. Section 9–306 deals with continued perfection of a security interest in proceeds of the collateral, and provides that insurance payments shall be such proceeds. Providing that a security interest *continues* in insurance payments as proceeds is not the same as imposing a duty on a third-party tortfeasor's insurance company to protect that security interest. As stated in *Chrysler Credit Corp., supra* 643 A.2d at p. 1102:

"It seems to us that neither the [Uniform Commercial Code] nor sound public policy warrants an elevation of security interests above the good to be gained from quick settlement by wrongdoers for damage done to fellow citizens. A requirement that a wrongdoer or his insurance carrier become embroiled in satisfaction of security liens would, in our view, have a chilling effect on prompt settlements. Moreover, the UCC's provision that proceeds become collateral and subject to the security lien is sufficient protection for the lienholder which, in the first instance, chose his debtor. . . .

Article nine of the Uniform Commercial Code was intended to define the rights of a secured creditor with respect to the debtor, purchasers of collateral and competing creditors. (citations omitted) When not named as a loss-payee, a secured creditor, under section 9–306 must bring an action against a debtor where the debtor has received insurance proceeds for the loss of collateral. (citations omitted) The creditor may also claim priority over other creditors who seek to attach such proceeds or pursue an action in conversion against a purchaser or transferee of the collateral or its proceeds. (citation omitted) Section 9–306 of the Uniform Commercial Code, however, does not allow a creditor to bring an action in conversion against an insurer after the proceeds of insurance have been disbursed as provided in the policy of insurance."

In *Shebester v. Triple Crown Insurers,* 826 P.2d 603 (Okla.1992),[2] in answering a federal certified question, we did not find recovery possible under § 9–306 for wrongful payment of insurance proceeds because the installment sales contract between seller and buyer did not create a security interest. In that case, the seller had notified the insurance company, prior to insurance company's payment of proceeds to its insured, that the installment sales contract had required that *seller* be the beneficiary of the insurance policy in question, but that buyer had failed to list seller as the beneficiary.

In the case at bar we determine that Trader's was under no obligation to ascertain the existence of and protect Lender's security interest before paying the insurance settlement to the borrower. Trader's is the insurance carrier for the third-party tortfeasor. Trader's determined that its insured was liable for the damage to the borrowers' vehicle and settled with the borrowers. Borrowers were in possession of the vehicle, and there was no suggestion that they were in default to Lender or that Lender had a right to possession of the vehicle at the time payment was made to borrowers. We find that the trial court properly granted summary judgment to defendant Trader's Insurance Company.

**CERTIORARI HAVING BEEN GRANTED PREVIOUSLY, THE OPINION OF THE COURT OF APPEALS IS VACATED; THE TRIAL COURT'S JUDGMENT IS AFFIRMED.**

**2.** Answer to certified question conformed to in *Shebester v. Triple Crown Insurers,* 974 F.2d 135 (10th Cir.1992).

HODGES, C.J., LAVENDER, V.C.J., and OPALA, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs in part and dissents in part by separate opinion.

SIMMS, Justice, concurring in part, dissenting in part:

I agree with the majority that Traders did not have a duty to satisfy Lender's lien before paying the insurance settlement to Borrowers. I dissent, however, from the majority's determination that Lender's other issue was not preserved for appeal.

I find Lender's arguments are not only preserved for appeal, but are persuasive. In its petition, Lender claimed that Traders was liable for damages in the amount of the garageman's lien. Lenders alleged that Traders had notice of its properly perfected security interest and wrongfully took possession of the car, caused charges to be assessed against it for repairs and storage and allowed it to be sold to foreclose the garageman's lien. Lender urged this issue as a basis for the appeal in its petition in error and its brief. Traders has even conceded that Lender is entitled to the salvage value of the automobile.

The decisions cited by the majority to sustain its holding regarding the insurance settlement payment actually support Lender's arguments on the issue of the wrongful possession. In *Scholfield Bros., Inc. v. State Farm Mut. Auto Ins. Co.*, 242 Kan. 848, 752 P.2d 661 (1988), the court pointed out that what had happened to the physical remains of the wrecked vehicle was not an issue in that case because when the lender refused to release its security interest, the insurance company returned the title to the lender which, the court noted, was an act of "abandonment of any ownership claim therein". 752 P.2d at 666. Similarly in *Chrysler Corp. v. Smith*, 434 Pa.Super. 429, 643 A.2d 1098 (1994), the court was concerned only with payment of the insured's loss as the insurance company never took title to the damaged vehicle and never had possession of the certificate of title or the vehicle. The court there noted, however, that an insurer may convert a salvage vehicle by taking posses-

sion of it and thereafter disposing of it. In *State Automobile Mutual Insurance Company v. Chrysler Credit Corp., et al*, 792 SW 2d 626 (Ky.App.1990), that court found the allegations of that Lender's petition were sufficient to assert conversion of a wrecked vehicle where the insurance company took possession of the salvage without recognition of the interest of the lien holder, did not apply for a statutory "salvage title" and wrongfully withheld the vehicle from the Lender.

Traders is not, in my opinion, entitled to judgment as a matter of law and the material facts are in dispute. I would reverse the summary judgment entered in favor of Traders and remand the matter for trial on this issue.