## James W. Tufts, Appellant, *v.* W. G. and D. E. Park.

*Landlord and tenant—Distress—Bailment—Soda fountain.*

Where a soda water fountain has been leased to the proprietor of a drug store, who occupies a leased room, and the lessor of the fountain has not exercised his right to take possession of it before the issuance of a landlord's warrant, the right of the landlord to distrain is not defeated by the fact that, at the tenant's request, he had previously appointed an agent to supervise the tenant's business, if it appears that the landlord did not purchase the business, but that the tenant remained in possession, continued to conduct the business, and at any time could have excluded the landlord and his agent from the store.

Argued Oct. 26, 1899. Appeal, No. 95, Oct. T., 1899, by plaintiffs, from judgment of C. P. No. 1, Allegheny County, Sept. T., 1897, No. 600, on verdict for defendants. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Affirmed.

Trespass for alleged wrongful distraint of a soda water fountain. Before STOWE, P. J.

At the trial the following lease was offered in evidence:

"PITTSBURG, PA., Feb. 13th, 1896.

"JAMES W. TUFTS,

"Boston, Mass.:

"Forward the following described Soda-Water Apparatus, which I agree to lease from you for the period of 30 months, and to pay for the hire thereof a monthly rent as follows: $300 cash and $50 per month, and to keep the same in good repair and insure for the sum of $——. Upon receipt of Bill of Lading I agree to give you promissory notes for the several payments of rent as above, provided however, that if in addition to paying all the payments of rent as above, I also pay $62 within one month from the date of the last payment of rent, the apparatus shall become mine, and you shall give me a bill of sale. You are to have the right in default of any of the above payments of rent at the time specified or upon issuance of execution, attachment, distress for rent, or like process, to immediately take possession of said property; and at the end of said

time I agree to surrender the same, such agreement not to deprive me of right of purchase as above stipulated. . . .

                    " JAS. F. GOLDAINE."

The *apparatus* was shipped April 1, 1896. Tufts never exercised his right to take possession of the property. Goldaine became embarrassed in business, and at his request, the defendants, his landlords, appointed a person in their employ to supervise the business, leaving Goldaine in charge and control of the business and property. On May 21, 1897, defendants issued a landlord's warrant, and at the sale thereunder they bought the soda fountain and other property on the premises.

Other facts appear by the opinion of the Supreme Court.

The court charged as follows :

Under the testimony and the law as we understand it, the defendants are entitled to a verdict in this case. There is nothing in the case that would show such a taking of the property as would divest their right to levy upon the property in the store at the time the landlord's warrant was issued. The warrant was regular in form and shape in every respect, and the sale under the warrant vested the title in the purchaser, which seems to have been in the defendants. Therefore, your verdict should be for defendants.

Judgment and verdict for defendants. Plaintiff appealed.

*Error assigned* was the charge of the court.

*Samuel McClay*, with him *William J. Barton*, for appellant. —Evidence of conversion in an action of trover is matter of fact for the jury : Harger v. McMains, 4 Watts, 418.

If a person has the property of another upon his premises and forbids or prevents its removal, he is chargeable for a conversion of the property. The courts hold that a very slight interference with or control over the property of another to the exclusion of the owner amounts to a conversion : Wheeler & Wilson Mfg. Co. v. Heil, 115 Pa. 487 ; Farrar v. Chauffetete, 5 Denio, 527 ; Delano v. Curtis, 7 Allen, 470 ; Woodis v. Jordan, 62 Maine, 490 ; Walker v. Clyde, 10 C. B. (N. S.) 381 ; Overton v. Williston, 31 Pa. 155.

The right to distrain the property of a stranger rests on no principle of reason or justice: Brown v. Sims, 17 S. & R. 138.

*S. W. Cunningham*, with him *Thomas D. Chantler* and *William M. McGill*, for appellees.

OPINION BY MR. JUSTICE BROWN, December 30, 1899:

The appellant and appellees agree that the sole question to be considered is: "Was there a conversion of this soda fountain by the appellees prior to the issuance of the landlord's warrant?" If the defendants had so converted it to their own use, the verdict in their favor rendered by direction of the court, and the judgment subsequently entered thereon cannot be sustained. The material facts in the light of which the question is to be determined can be readily condensed from the evidence. Goldaine, the tenant of the appellees, had become indebted in a large sum for arrearages of rent. Being so indebted he had in his possession the soda fountain in controversy, and the right of the appellant, under the terms of his contract, to take possession of it before the warrant was issued cannot be disputed. This right was not exercised. In his embarrassment Goldaine requested the appellees to supervise his business, and to send some one to his store to take charge of the cash received and pay bills to be incurred in running it. Hamilton, acting for the Park Brothers, and believing that the store could make money, consented to the arrangement proposed by Goldaine, and did take charge of and undertake to supervise the business, Goldaine remaining as tenant of the premises and having charge of the goods. Nothing was sold or transferred to the appellees. It nowhere appears that the landlords intended to or did purchase the stock and fixtures, and they could not have surrendered the fountain to which they made no claim of ownership, and which was still in the possession of Goldaine. They could not have surrendered that over which they had exercised no ownership, and which they had no right to surrender to any one. Goldaine alone could have done this. If he had refused to surrender the fountain upon demand, the plaintiff had an instant remedy for the recovery of his property. The arrangement was simply for the appellees' supervision of the business at the request of the tenant, in the hope, that so supervised, it

might yield better returns and relieve him from his embarrassment.

Called as a witness by the appellant, Goldaine testifies: " The arrangement was that Mr. Hamilton was to send a man down there to take a note of the cash that came in and see how it was spent and where it went to." The cash received was deposited in the name of Goldaine. The testimony of this witness again was that the arrangement simply amounted to this: That at his request, Mr. Hamilton, who believed that the business could be made to go, was asked to come and take charge of the cash " and give a supervision over the business." The goods, fixtures and everything in the store continued to be the property of the tenant, and he was in possession of them and the premises until after the sale on the landlord's warrant. No agreement had been made that the arrangement with Hamilton was to last for any definite period. Goldaine could at any time have excluded him and his representative from the store. The appellees neither directly nor through their representative at any time claimed to be the owners of the fountain by purchase or transfer from Goldaine, but, on the other hand, on June 8, 1897, sold the same as his, the tenant's, property on a landlord's warrant that had been issued after the experiment of their supervision of the business had been tried for several weeks without results anticipated.

We can find nothing in the evidence to justify the allegation that the defendants had converted the property to their own use, and there was no error when the court said, " Under the testimony and the law as we understand it, the defendants are entitled to a verdict in this case."

The judgment is affirmed.