**JUDAH AMC & JEEP, INC., Appellant,**

v.

**OLD REPUBLIC INSURANCE COMPANY, Appellee.**

No. 63282.

Supreme Court of Iowa.

June 18, 1980.

Keith E. Uhl, of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Jack W. Rogers and Clyde C. Putnam, Jr., Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, HARRIS, and ALLBEE, JJ.

HARRIS, Justice.

In a transaction for purchase of a fleet of automobiles by a car-rental business provision was made for obtaining insurance. Collision insurance was provided but a loss-payable clause was not. The seller then assigned its interest to a bank. After loss of one of the vehicles payment was made, not to the holder of a recorded security interest, but to the borrower named in the policy. The borrower became defunct without paying the insurance proceeds over to the lender. The lender then brought this suit against the insurer on the theory that the insurer had actual or construction no-tice of the security interest and that the lender, rather than the borrower, was entitled to the insurance proceeds. We affirm the trial court's judgment for the insurer.

Plaintiff sold a fleet of 32 automobiles for $147,585.92 to Zebra Rent-A-Car which did business as Dollar Rent-A-Car (hereinafter Dollar). Thereafter plaintiff assigned the contract to Central National Bank. The assignment was with recourse to the plaintiff. The bank perfected its security interest on the vehicles by recording the contract in Polk County. The reverse side of the contract contained a statement that "loss or damage to the vehicle shall be at buyer's risk and buyer shall procure and maintain for the term hereof insurance at buyer's expense against loss or damage to vehicle. Buyer hereby appoints dealer the agent and attorney for buyer in adjusting and cancelling such insurance and endorsing settlement drafts. Buyer shall deliver all insurance policies to dealer if dealer so requests."

After the security agreement was recorded defendant insured the fleet for a total potential liability of $155,000. No loss-payable provision on the policy was completed, either in favor of the seller or lender. One of the cars under the contract, covered by the policy, was thereafter destroyed in a collision. Its value was $3860.24 (with $250 deductible). A sworn proof of loss, made for Dollar by its president, stated in part: "The said automobile at the time of the loss . . . belonged solely to insured and no other person had any interest therein, by chattel mortgage, sale contract, or otherwise, except as follows: No exceptions."

In processing the claim the insurer spoke with the seller to establish the purchase price of the destroyed vehicle. The parties sharply dispute the significance of this conversation. Plaintiff believes it establishes actual knowledge by the insurer of the falsity of the statement in the proof of loss. The insurer argues the conversation betrays no such knowledge. To the contrary, the insurer thinks it is significant that during the conversation the plaintiff did not claim any interest in the vehicle.

The $3610.24 was paid by the insurer to Dollar. It was not applied to the outstanding debt owed to Central National Bank. Subsequently plaintiff was required to pay the bank the balance of the contract, including the value of the destroyed automobile. Plaintiff then took an assignment from the bank for this claim and, being unable to collect from Dollar or its officers, brought this suit.

Trial was to the court upon stipulated facts. The trial court found that neither the plaintiff nor the bank intended to make the proceeds of the insurance collateral or a direct security interest. It also found the insurer did not receive actual notice to make payment under the loss to anyone other than to Dollar, the named insured.

■ I. This is a law action, reviewable on assigned errors only. Iowa R.App.P. 4; *Keith v. Community Sch. Dist. of Wilton, Etc.*, 262 N.W.2d 249, 255 (Iowa 1978). It is well settled that one holding a security interest in property may insure it or contract that insurance be provided. Where this is done the holder of the security interest has a lien on insurance proceeds even where the policy does not so provide. *Winneshiek Mutual Ins. Assn. v. Roach*, 257 Iowa 354, 362–63, 132 N.W.2d 436, 441 (1965). *See* 46 C.J.S. Insurance § 1147(b). But this rule does not reach the plaintiff's claim here because there was in fact no provision upon which such a lien could be based. Accordingly the plaintiff focuses its argument upon the theory that underlies the recording acts.

The plaintiff cites and relies upon cases from other jurisdictions, principally *Gibbes Machinery Co. v. Niagara Fire Ins. Co.*, 119 S.C. 1, 111 S.E. 805, 21 A.L.R. 1460 (1922), which, it is urged, hold that the recording of the mortgage is sufficient notification to an insurer. In *Gibbes*, even though the insurance was made out in favor of the mortgagor and not the mortgagee, the insurer became obligated to the mortgagee by reason of the recording and an insurance adjuster's knowledge of the mortgage.

We are unwilling to apply such a rule to the facts here. We are bound by the trial court's finding that neither the plaintiff nor the bank intended to make the proceeds of the insurance a collateral or a direct security interest. We are likewise bound by the trial court's finding that the insurer did not receive actual notice to make payment of the loss to anyone other than the named insured.

■ The question becomes whether an insurer, before paying a routine loss, must conduct a search of public records in order to avoid becoming liable to some secured but otherwise undisclosed creditor. Such a startling—and expensive—requirement is certainly not required by the uniform commercial code. The act provides that insurance proceeds are subject to priority between lien holders. § 554.9104 and § 554.-9306, The Code 1979. But these provisions would merely accord plaintiff a prior right to the insurance proceeds against a third party who might assert a claim or lien against a car owned by Dollar.

According to section 554.9318(3):

The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective.

· · ·

Under this section the insurer as debtor had a right to settle with Dollar unless and until it had actual notice of an assignment of the debt. According to section 554.1201(26) a person receives notice or notification when (a) it comes to his attention; or (b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as a place for receipt of such communications.

There was no such notice.

We believe it is clear that the insurer had a right to pay Dollar. It had no obligation to search the records in the courthouse. The trial court was right in so holding.

AFFIRMED.