643 A.2d 1098

**CHRYSLER CREDIT CORPORATION,**

v.

**Harry G. SMITH, Kathy Alexander, Republic Leasing Co., and Pennsylvania National Mutual Casualty Insurance Co.**

**Appeal of PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO.**

Superior Court of Pennsylvania.

Argued Feb. 8, 1994.

Filed June 24, 1994.

430

Michael D. Pipa, Harrisburg, for appellant.

John C. Sullivan, Jr., Harrisburg for appellee.

Before WIEAND, McEWEN and SAYLOR, JJ.

WIEAND, Judge:

The issue in this appeal is whether an automobile insurer, before paying a fire loss, must conduct a search of public records in order to avoid liability to a lienholder who has not been named as a loss-payee in the policy and whose interest has not otherwise been disclosed to the insurer. The trial court held that the insurer had a duty to search the public records before paying a routine loss, and entered summary judgment in favor of the lienholder and against the insurer. After careful review, we reverse.

On November 11, 1985, Harry G. Smith and Kathy Alexander, t/a Republic Leasing Company, a partnership (hereinafter "Republic Leasing"), purchased a 1986 Chrysler Fifth Avenue and entered into a retail installment contract for payment of the purchase price. This contract was assigned to Chrysler Credit Corporation, which perfected a security interest in the vehicle. A provision of the installment contract also granted Chrysler a security interest in any insurance proceeds of the collateral and required Republic Leasing to maintain insurance naming Chrysler as an additional loss-payee. Chrysler's

security interest was perfected and duly noted on the car's certificate of title, and Chrysler has continually maintained possession of the title.

Subsequent to purchase, Republic Leasing purchased insurance coverage from Federal Kemper Insurance Company, and both Republic Leasing and Chrysler were named as loss-payees. On October 20, 1987, however, Republic Leasing terminated the insurance policy with Kemper and obtained coverage under a new policy issued by Pennsylvania National Mutual Casualty Insurance Company. On the application for insurance, Chrysler was not identified; and, therefore, it also was not named as a loss-payee in the policy.

On April 13, 1988, the automobile was destroyed by fire. In response to a claim under the policy, Pennsylvania National drew a check to Harry G. Smith and Republic Leasing in the amount of $11,666, representing the market value of the car, less the deductible feature of $100. Before the check was delivered, however, the insured advised Pennsylvania National that it wished to retain the vehicle. Instead of drafting a new check, it was agreed that the insurer would deliver the check for $11,666, and the insured would reimburse the insurer for the vehicle's salvage value of $1,100. As a consequence, the insurer did not acquire title to the damaged vehicle. It also did not acquire possession of the certificate of title.

The insured thereafter applied the proceeds of the Pennsylvania National check to its own purposes and defaulted in paying the balance of $8,962 owed to Chrysler. Chrysler then filed an action against the partnership, as well as the individual partners, and also against Pennsylvania National to recover the moneys due it on account of the purchase price of the car. The partnership, as well as the individual partners, commenced bankruptcy proceedings, but Chrysler continued its action against Pennsylvania National. It contended that Pennsylvania National had unlawfully converted collateral when it paid the policy proceeds to the insured without

protecting the interest of the lienholder.[1] In response to cross-motions for summary judgment, the trial court entered judgment in favor of Chrysler and against Pennsylvania National. The insurer appealed.

In reviewing an order granting summary judgment, we view the record in the light most favorable to the non-moving party, with all doubts resolved against the moving party. *Denlinger, Inc. v. Dendler,* 415 Pa.Super. 164, 170, 608 A.2d 1061, 1064 (1992). Only where the interrogatories, affidavits and depositions of record disclose that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law will an order granting summary judgment be affirmed. *Buckno v. Penn Linen & Uniform Service, Inc.,* 428 Pa.Super. 563, 565–566, 631 A.2d 674, 675 (1993). Summary judgment should be granted "only in cases where the right is clear and free of doubt." *Musser v. Vilsmeier Auction Co., Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989).

To determine whether a secured creditor may succeed in an action for conversion, we look to the common law. *Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 320 n. 1, 524 A.2d 896, 898 n. 1 (1987), *allocatur denied,* 516 Pa. 625, 532 A.2d 436 (1987). Conversion at common law is a tort by which the defendant deprives the plaintiff of his or her right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. See: *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964); *Bank of Landisburg v. Burruss, supra.* A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion. *Eisenhauer v. Clock Towers Associates,* 399 Pa.Super. 238, 243, 582 A.2d 33, 36 (1990). A plaintiff who has perfected a security interest in

---

1. Chrysler also alleged a cause of action for breach of contract to a third party beneficiary and for professional negligence. These counts, however, were dismissed by the trial court and have not been separately appealed or argued in this appeal.

collateral has a sufficient interest to maintain an action for conversion in appropriate circumstances. 13 Pa.C.S. § 9502(a).

■■ When a debtor disposes of collateral which has been subjected to a perfected security interest, the secured party may bring an action against the debtor on the original debt or to collect the proceeds from a sale of the collateral, or he may proceed against the transferee of the collateral in replevin or in trespass for conversion. *First Pennsylvania Banking & Trust Co. v. Liberati,* 282 Pa.Super. 198, 206, 422 A.2d 1074, 1077 (1980). Before an action for conversion will lie against the transferee, however, there must have been a sale or transfer of the collateral. *Tufts v. Park,* 194 Pa. 79, 44 A. 1079 (1899). "Not every destruction or deprivation of property amounts to a conversion; there must be an actual appropriation of it by the offending party for his own use." 37 P.L.E. *Trespass* § 81.

Here, it has been stipulated that the insurance company never took title to the damaged vehicle and never had possession of the certificate of title therefor. Although the insurer delivered a check to its insured in payment of the insured's loss, ownership and possession of the collateral at all times remained in the insured. It is clear, therefore, that the insurer was not guilty of converting the vehicle.

■■■ However, insurance proceeds which are payable upon loss or damage to collateral are proceeds of collateral in which an insured may have a continuing interest. 13 Pa.C.S. § 9306. Thus, when named as a loss-payee on a contract of insurance covering collateral, a secured creditor acquires an action for conversion against an insurer who has wrongfully disbursed the insurance proceeds to the debtor without regard for the creditor's interest therein. *Burge v. Cohen,* 705 S.W.2d 27, 29 (Mo.App.1985). The Uniform Commercial Code, however, does not permit a creditor who has not been named as a loss-payee in the policy to pursue an action for conversion against an insurer which has merely disbursed insurance proceeds in the manner required by the policy. The

applicable law has been stated at 68A Am.Jur.2d, Secured Transactions § 92, as follows:

> [A]lthough the secured creditor has a security interest in insurance proceeds that have been received by the debtor, the creditor cannot sue the insurer to recover the proceeds when the policy did not name the creditor as an insured or as a loss payee.
>
> An insurer that has no actual knowledge of the existence of a security interest in the insured property may pay the loss directly to the debtor and is not required to examine the filing index to see if there is any security interest. In such case, the insurer is not liable for conversion if it has acted in good faith. Even when an insurer who knows of the existence of the security interest pays the debtor an amount in settlement for the full value of the destroyed collateral, the secured creditor holding a perfected security interest therein cannot sue the insurer for conversion, as the act of the insurer in making payment does not constitute the exercise of dominion and control over property of another. (footnotes omitted).

The Pennsylvania courts have not spoken to this issue. In *Terra Western Corp. v. Berry & Co.*, 207 Neb. 28, 295 N.W.2d 693 (1980), however, the Supreme Court of Nebraska addressed a similar issue. In that case, a secured creditor charged that an insurer had converted insurance proceeds by paying directly to the insured a claim for the destruction of collateral. The court acknowledged that the Uniform Commercial Code, section 9–306, provided that insurance proceeds from collateral were subject to a secured interest. It held, however, that the insurer had not committed a tort by paying benefits in the manner designated by the contract of insurance. *Id.*, 295 N.W.2d at 696. The Uniform Commercial Code, the court held, did not provide otherwise.

> An examination of the language of the statute shows that proceeds of an insurance policy covering destroyed property or other proceeds do not become "proceeds" within the meaning of the code until the money "is received." Patently this means receiving by the owner. The insurer does not

receive the proceeds; it pays them. This is made clear by the language of subsection (1) referring to acts by the mortgagor: "when collateral or proceeds is sold, exchanged, collected or otherwise disposed of." These refer to acts of the mortgagor. This conclusion is further reinforced by the language of subsection (2) which refers to "sale, exchange or other disposition thereof by the debtor." All this language makes it plain that the mortgagee's lien extends to proceeds received by the debtor. It patently does not apply to an insurer who, in good faith and without actual notice or legal obligation arising from a loss payable clause, fulfills its contractual obligation to pay the owner.

*Id.* at 697–698. The mere payment of a loss claim by an insurer, the court said, could not support an action in conversion by a secured creditor who was not named as a loss-payee in the policy. *Id.* at 698. See also: *Scholfield Bros., Inc. v. State Farm Mut. Automobile Ins. Co.*, 242 Kan. 848, 752 P.2d 661, 666 (1988). But see: *Nationwide Ins. Co. v. Bank of Forest*, 368 So.2d 1273 (Miss.1979); *First Nat'l Bank of Bethany v. Amer. General Fire and Casualty Co.*, 927 F.2d 1126 (10th Cir.1991).

 Notation of a lien on a vehicle's certificate of title does not permit a creditor to bring an action in conversion against an insurer which did not receive possession of, or title to, the salvage. As the court in *State Automobile Mutual Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626 (Ky.App.1990) observed, while an insurer may convert a salvaged vehicle by taking possession of it and thereafter disposing of it, the disbursement of a settlement check should not, as a matter of public policy, subject the insurer to liability.

It seems to us that neither the [Uniform Commercial Code] nor sound public policy warrants an elevation of security interests above the good to be gained from quick settlement by wrongdoers for damage done to fellow citizens. A requirement that a wrongdoer or his insurance carrier become embroiled in satisfaction of security liens would, in our view, have a chilling effect on prompt settlements. Moreover, the UCC's provision that proceeds become collat-

eral and subject to the security lien is sufficient protection for the lienholder which, in the first instance, chose his debtor.

*Id.* at 629. If insurance carriers were saddled with the burden of conducting title searches prior to disbursing payments, prompt settlement of insurance claims would be hindered. Cf.: *International Harvester Credit Corp. v. Valdez,* 42 Wash. App. 189, 709 P.2d 1233 (1985).

 Article nine of the Uniform Commercial Code was intended to define the rights of a secured creditor with respect to the debtor, purchasers of collateral and competing creditors. 13 Pa.C.S. § 9201. Cf: *PPG Industries, Inc. v. Hartford Fire Ins. Co.,* 531 F.2d 58 (2d Cir.1976). When not named as a loss-payee, a secured creditor, under section 9–306, must bring an action against a debtor where the debtor has received insurance proceeds for the loss of collateral. See: *Insurance Management Corp. v. Cable Servs. of Florida, Inc.,* 359 So.2d 572 (Fl.App.1978); *Ettinger v. Central Pennsylvania Nat'l Bank,* 2 B.R. 385 (E.D.Pa.1979), *reversed on other grounds,* 634 F.2d 120 (3d Cir.1980). The creditor may also claim priority over other creditors who seek to attach such proceeds or pursue an action in conversion against a purchaser or transferee of the collateral or its proceeds. *Casterline v. General Motors Acceptance Corp.,* 195 Pa.Super. 344, 171 A.2d 813 (1961). Section 9–306 of the Uniform Commercial Code, however, does not allow a creditor to bring an action in conversion against an insurer after the proceeds of insurance have been disbursed as provided in the policy of insurance.

The question becomes whether an insurer, before paying a routine loss, must conduct a search of public records in order to avoid becoming liable to some secured but otherwise undisclosed creditor. Such a startling—and expensive—requirement is certainly not required by the uniform commercial code. The act provides that insurance proceeds are subject to priority between lien holders. [Sections 9–104 and 9–306.] But these provisions would merely accord [a creditor] a prior right to the insurance proceeds against a

third party who might assert a claim or lien against [the collateral].

*Judah AMC & Jeep, Inc. v. Old Republic Ins. Co.,* 293 N.W.2d 212, 214 (Iowa 1980).

These decisions, although not binding, are persuasive. The considerations therein stated are determinative of our decision that the appellant-insurer, under the facts stipulated in the instant case, was not guilty of converting collateral or the proceeds thereof.

The order of the trial court entering judgment in favor of Chrysler Credit Corporation is reversed and is now entered in favor of Pennsylvania National Mutual Casualty Insurance Company.