

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# Key Corporate Cap v. Tilley

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1789

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Key Corporate Cap v. Tilley" (2007). *2007 Decisions.* Paper 1650.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1650

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1789

KEY CORPORATE CAPITAL, INC. SUCCESSOR
BY MERGER TO KEYCORP LEASING, INC.

v.

DAVID A. TILLEY; PENNCO MACHINE, INC;
BOSTON MACHINERY, INC.; PENNCO MACHINE, LLC

David A. Tilley; Pennco Machine, Inc.;
Pennco Machine, LLC,
                    Appellants

No. 06-2096

KEY CORPORATE CAPITAL, INC.,
SUCCESSOR BY MERGER TO KEYCORP LEASING, INC,
                    Appellant

v.

DAVID A. TILLEY; PENNCO MACHINE, INC.;
PENNCO MACHINE LLC; BOSTON MACHINERY, INC.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 04-cv-01652
District Judge:  The Honorable Lawrence F. Stengel

Submitted Under Third Circuit LAR 34.1(a)

January 29, 2007

Before: BARRY, ROTH, Circuit Judges, and DEBEVOISE,[*] District Judge

(Opinion Filed: February 7, 2007)

OPINION

BARRY, Circuit Judge

I.

Key Corporate Capital, Inc. ("Key") leased a Hitachi Seiki Model HT40G-111 CNC Turning Center (the "equipment") to New Holland North America ("New Holland"). When the lease ended, New Holland returned the equipment to Pennco Machine, Inc. ("PMI"), a machine tool distributor that acted as Key's dealer.

In December 2002, PMI sought Key's permission to sell the equipment to Boston Machinery, Inc. ("Boston"). Key agreed, contingent on receiving $80,000 in payment when the equipment was sold. PMI sold the equipment to Boston, but PMI never paid Key.

On January 7, 2004, Key, PMI, and PMI's sole officer and shareholder, David Tilley, entered into a settlement agreement in which Tilley pledged to repay Key in

_____

[*] The Honorable Dickinson R. Debevoise, Senior District Judge, United States District Court for the District of New Jersey, sitting by designation.

2

monthly installments in exchange for Key's promise not to sue. Tilley, however, never made any payments.

On April 15, 2004, Key filed suit, alleging conversion, fraud, and breach of contract against PMI and Tilley; officer participation against Tilley; successor liability against Pennco Machine, LLC. ("Pennco Machine"); and conversion and replevin against Boston. On December 20, 2004, the U.S. District Court for the Eastern District of Pennsylvania granted summary judgment against PMI and Tilley for failure to remit the $80,000 to Key. On February 27, 2006, the Court granted summary judgment against Key on its claims against Boston, finding Boston to be "a buyer in ordinary course of business," who therefore held good title to the equipment.

PMI, Tilley, and Pennco Machine now appeal, and Key cross appeals. We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review. Anderson v. Consolidated Rail Corp., 297 F.3d 242, 246 (3d Cir. 2002). We cannot affirm unless, viewing the facts in the light most favorable to the non-moving party, we are convinced that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We will affirm both orders of the District Court.

## II.

Pennsylvania law defines conversion as the deprivation without permission of a plaintiff's right to a chattel. Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa.

3

Super. Ct. 1994). Money is recognized as a permissible subject of conversion. <u>Francis J. Bernhardt, III, P.C. v. Needleman</u>, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (imposing conversion liability on a law firm's failure to remit settlement proceeds).

Here, Key allowed PMI to sell its equipment on the condition that, upon the sale, PMI pay it $80,000. Accordingly, Key holds an interest in the $80,000 that PMI retained, and PMI's failure to transmit the money to Key constitutes a wrongful conversion.

PMI's contention that the settlement agreement into which the parties entered precludes Key's claim for conversion is without merit. While it is true that we are generally cautious about permitting tort recovery based on contractual breaches, <u>see</u> <u>Bash v. Bell Telephone Co. of Pa.</u>, 601 A.2d 825, 829 (Pa. Super. Ct. 1992), we permit claims in tort when the tort constitutes the "gist of the action." <u>Etoll, Inc. v. Elias/Savion Advertising, Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("[I]t is possible that a breach of contract also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action . . . .").

PMI's duty to pay Key the $80,000 arose from the sale of the equipment itself, not from obligations created by the settlement agreement, which the parties entered into nearly a year later. The gist of the action test is "concerned with the essential ground, foundation, or material part of an entire formal complaint of lawsuit." <u>Id.</u> at 15. Conversion, therefore, forms the gist of the action here. The contract, negotiated in order to avoid suit, is merely collateral to the action itself, and thus Key may properly bring a

4

claim in tort.

PMI also argues that Tilley may not be held individually liable for conversion. Pennsylvania law, however, recognizes officer participation as a basis for tort liability. Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). Under the officer participation theory, corporate officers who take part in the commission of a tort by a corporation face personal liability. Id. Tilley participated in the conversion at issue here.

### III.

Finally, Key challenges Boston's status as a buyer in the ordinary course of business, a term the Pennsylvania Commercial Code (the "Code") defines as "[a] person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind . . . ." 13 Pa. C.S.A. § 1201.

Section 2403 of the Code protects buyers in the ordinary course of business from the claims of owners who have deputized merchants to sell their goods. Specifically, § 2403(b) provides: "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." Id. at § 2403(b).

Neither party disputes that PMI qualifies as a "merchant who deals in goods of that kind" nor that Key "entrusted" the equipment to PMI. Key, however, argues that Boston knew that the sale "violated" its ownership interest in the equipment and points to an

5

email from Key to Boston to support that claim. The email, written by Key employee Patricia Norwood, states that "[u]pon receipt of final payment, ownership will pass to [PMI]." While this email demonstrates that Boston knew that Key owned the equipment, it does not demonstrate that Boston knew its purchase "violated" Key's ownership rights, and Key has come forward with nothing else to demonstrate that it did. We conclude, therefore, that Boston purchased the equipment in good faith. As a buyer in the ordinary course of business, Boston held good title to the equipment and cannot be liable for conversion or replevin.

IV.

We will affirm both orders of the District Court.