J-A05024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| LINDA HART, INDIVIDUALLY AND AS CO-TRUSTEE OF THE DELORES L. PLOWCHALK AND RAYMOND B. PLOWCHALK LIVING TRUSTS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | No. 1609 WDA 2017 |
| JANICE WOLFE AND CHRISTINA REED | : | |

Appeal from the Order October 12, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-16-01185

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                     **FILED MAY 24, 2019**

Linda Hart ("Appellant"), individually and as co-trustee of the Delores L. Plowchalk and Raymond B. Plowchalk living trusts, appeals from the October 12, 2017 order granting judgment on the pleadings in favor of Janice Wolfe and her daughter, Christina Reed (collectively "Appellees").  After careful review, we affirm.

The relevant facts and procedural history of this matter were set forth by the orphans' court as follows:

> Delores [("Mother")] and Raymond Plowchalk [("Father")] had a long marriage. It produced three children: [Appellant] Linda Hart, [Appellee] Janice Wolfe[,] and David Plowchalk. In August, 2012, [Father] died. Fourteen months later, [Mother] died.

But, this story begins years before [Mother] and [Father's] demise. In 2001, [Father] established a living trust naming [Mother] as a successor trustee upon his death. It also provided that upon [Mother's] death, the assets would be distributed in equal shares to trusts for their 3 children. At the same time [Father's] living trust was established, [Mother] established her own. [Mother] also executed a will that left all of her assets to her living trust. This estate plan was necessary as [Mother] and [Father] had accumulated assets in excess of a million dollars.[1]

> [1] The estate size is inferentially confirmed by virtue of [Mother's] inheritance tax return which showed assets of over a million dollars were transferred to Janice or [to Appellees, jointly] by virtue of payable on death designations or joint tenancy.

The seeds of family discord were planted after [Father] died in 2012. In 2013, [Mother] executed a new will. This new document disinherited two of her children - David and [Appellant]. It also left [Mother's] entire estate to her daughter Janice. [Mother] also took action as her role as the successor trustee to [Father's] Living Trust. She withdrew assets from the trust and invested them. Those investments were designated to be paid upon [Mother's] death to her daughter, Janice or to [Appellees, jointly].

On October 5, 2013, [Mother] died. [Appellant], the disinherited daughter, challenged the will. That action was ultimately dismissed in May, 2015.

In January, 2016, the present action was filed by [Appellant]. [Appellant's] Amended Complaint sets forth five causes of action against [Appellees]. The parties have filed the necessary pleadings to allow for dispositive motions to be filed. The motion presently before this Court is [Appellees'] *Motion for Judgment on the Pleadings*.

Orphans' Court Opinion, 10/12/17, at 1-2.

On October 12, 2017, the orphans' court granted Appellees' motion for judgment on the pleadings. On October 31, 2017, Appellant filed a timely

notice of appeal. Both the orphans' court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues for this Court's consideration:

> 1. Whether [Appellant's] Civil Action should have been transferred to the Orphan's Court Division as the civil division properly had jurisdiction?
>
> 2. Whether Counts 1 through 4 of [Appellant's] Complaint, alleging, in general, conversion of assets, should have been dismissed as [Appellant] alleges a valid claim for conversion?
>
> 3. Whether Count 5 of [Appellant's] Complaint should have been dismissed as [Appellant] allege[d] a valid claim for Interference with Expected Inheritance?

Appellant's Brief at 5.

Our scope and standard of review in an appeal of an order granting a motion for judgment on the pleadings is as follows:

> this Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. We must determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. We will affirm the grant of judgment on the pleadings only if the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.

*DeSantis v. Prothero*, 916 A.2d 671, 673 (Pa. Super. 2007) (internal citations and quotation marks omitted).

In her first issue, Appellant avers that the underlying matter was a civil action; therefore, Appellant alleges that the trial court erred in transferring

this matter from the civil division to the orphans' court. Appellant's Brief at 5, 15. We note that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. **In re Estate of Ciuccarelli**, 81 A.3d 953, 958 (Pa. Super. 2013) (citation omitted). The standard of review we apply is *de novo*, and our scope of review is plenary. **Id.** (citation omitted).

We point out that when a cause of action is initiated in an improper division of the court of common pleas, the matter shall be transferred to the proper division. 42 Pa.C.S. § 5103(c). Section 5103(c) provides as follows:

> **(c) Interdivisional transfers.--**If an appeal or other matter is taken to, brought in, or transferred to a division of a court to which such matter is not allocated by law, the court shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper division of the court, where the appeal or other matter shall be treated as if originally filed in the transferee division on the date first filed in a court or magisterial district.

42 Pa.C.S. § 5103(c). After review, we conclude that the civil division properly transferred this matter to the orphans' court division.

> [T]he jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> * * *
>
> **(17) Title to personal property.--**The adjudication of the title to personal property in the possession of the personal representative, or registered in the name of the decedent or his nominee, or alleged by the personal representative to have been in the possession of the decedent at the time of his death.

20 Pa.C.S. § 711(17). Moreover, "where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section[,]" jurisdiction is proper in the orphans' court. 20 Pa.C.S. § 712(3).

The focus of Appellant's Amended Complaint was on personal property owned by Mother at the time of Mother's demise. Appellant's Amended Complaint, 4/7/16, at ¶¶ 19, 20, 22, 24, and 25. Pursuant to 42 Pa.C.S. § 5103(c), we conclude that there was no error of law in the civil division transferring this matter to the orphan's court. Jurisdiction was mandatory as to the claims regarding personal property owned by Mother at the time of her death, 20 Pa.C.S. § 711(17), and these questions concerning Mother's personal property afforded the orphans' court jurisdiction over the remaining matters. 20 Pa.C.S. § 712(3).

In her remaining two issues on appeal, Appellant avers that the orphans' court erred in dismissing counts one through five of her Amended Complaint in which she raised claims for conversion, civil conspiracy, and interference with an expected inheritance. Appellant's Brief at 5, 18-23. After review, we conclude that no relief is due.

The orphans' court addressed Appellant's claims of error as follows:

> [Appellees] initial attack on the Amended Complaint focuses our attention on the first four claims of wrongdoing. [Appellees] take a two-pronged approach. First, they claim [Appellant] does not have standing to pursue counts one through four. A secondary argument is that, if standing is present, the Amended Complaint fails to allege sufficient facts to support the conversion claims. The

Court will assume that standing is present and will then grant judgment on the pleadings as to counts 1, 2, 3 and 4 for the reasons that follow.

The common denominator of Counts 1 through 4 is that [Appellees] converted [Mother's] assets to themselves.[2] Our Supreme Court has referenced []the following ways in which a conversion can be committed:

> (a) Acquiring possession of the goods, with an intent to assert a right to them which is in fact adverse to that of the owner;
>
> (b) Transferring the goods in a manner which deprives the owner of control;
>
> (c) Unreasonably withholding possession from one who has the right to it;
>
> (d) Seriously damaging or misusing the chattel in defiance of the owner's rights.

*Norriton East Reality Corp. v. Central-Penn National Bank*, 254 A.2d 637, 638 (Pa. 1969). As both parties recognized in their competing papers, conversion is a tort []by which the defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the plaintiff's consent and without lawful justification. *Chrysler Credit Corporation v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. 1994), appeal denied, 652 A.2d 834 (1994). Important for our purposes, is that the plaintiff in a conversion action is the person whose property has been taken or interfered with. "A plaintiff has a cause of action in conversion if ... she had actual or constructive possession of a chattel at the time of the alleged conversion." Id. A third basis is if the plaintiff has an "immediate right to possession of the chattel at the time of the conversion." Eisenhauer v. Clock Towers Assocs., 582 A.2d 33, 36 (Pa. Super. 1990); *Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. 1987) (noting "plaintiff may bring suit for conversion if he had an immediate right to possession of the chattel at the time it was converted").

> [2] A civil conspiracy assertion needs an underlying claim to sustain itself. []Under ... Pennsylvania law, a

conspiracy claim will not lie without a valid underlying civil claim. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del.Ch.2009) ("Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong."); *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa.Super.2004) ("Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). *Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. 2013). Given the Court's ruling on the true conversion counts, this claim for civil conspiracy suffers the same fate.

[Appellant] did not have actual possession of the property. Likewise, she has not demonstrated that she had the "immediate right" to possession of the chattel at the time it was supposedly converted. According to [Appellant], she had constructive possession. Constructive possession is an appropriate basis upon which to push forward with a conversion action. *Chrysler Credit Corp.*, 643 A.2d at 1100. However, the theory of constructive possession [Appellant] relies upon here is that she had a "legitimate expectancy[1] that the assets that were in [Father's] Living Trust and that were intended to go into [Mother's] Living Trust would have ultimately been distributed to her as a beneficiary and co-trustee of the Trusts." *Brief in Opposition to Motion for Judgment on the Pleadings* ([Appellant]), pg. 3.

In shortened form, the issue is whether an "expectancy" equates with constructive possession. [Appellant] has not directed us to any law that definitively answers the question in her favor. Instead, she references *Chrysler Credit Corp., supra*, as being "similar" to her "situation". *Brief in Opposition to Motion for Judgment on the Pleadings* ([Appellant]), pg. 3. The Court does not see the similarity especially when reviewing the definition of "constructive possession".[3] Constructive possession has been

---

[1] An "expectancy" is "a bare hope of succession to the property of another such as may be entertained by an heir apparent. Such a hope is inchoate, it has no attribute of property, is without appreciable value, and the interest to which it relates is non-existent and may never exist." **Hutnik v. Hutnik**, 535 A.2d 151, 155 (Pa. Super. 1987) (internal quotation marks and citations omitted).

defined as "conscious dominion" which requires the power to control the item and the intent to exert such control. *Commonwealth v. Carroll*, 507 A.2d 819, 820-21 (Pa. 1986). [Appellant] simply did not have the power to control the items which are at the core of her accusation of conversion. As such, she did not have constructive possession.

> [3] The Court is quite familiar with that phrase having spent over 8 years in the criminal division of this Court.[2]

Consistent with the order which accompanies this opinion, [Appellees'] *Motion for Judgment on the Pleadings* as to Counts 1, 2, 3 and 4 will be granted.

[Appellees] also take exception to the 5th count of the Amended Complaint. [Appellant] advances a claim for interference with an expected inheritance. But, in a divergence from established Pennsylvania law, she asserts that her claim has nothing "to do with the will." *Brief in Opposition to Motion for Judgment on the Pleadings* ([Appellant]), pg. 6. Instead, her claim is that [Appellees] "interfered with the testamentary scheme" of [Father and Mother] "isolating [Mother]" from the rest of the family after [Father's] death which then lead to all of [Mother's] assets going to [Appellees]. Id.

Unfortunately for [Appellant], Pennsylvania law does not recognize the nuance that she proposes. The cause of action for wrongful interference with testamentary expectancies has been part of Pennsylvania's legal fabric for 113 years. It was in *Marshall v. DeHaven*, 58 A. 141 (Pa. 1904), where our Supreme Court discussed the elements of this claim. From this rather short opinion, a few cases in our history have identified the precise elements to this cause of action. Those elements are:

---

[2] Although the orphans' court references the criminal division in its understanding of the term "constructive possession," we note that "constructive possession" is a term of art in civil proceedings as well. ***See Pittsburgh Const. Co. v. Griffith***, 834 A.2d 572, 581 (Pa. Super. 2003) ("A plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of the alleged conversion."). We agree with the orphans' court that an expectancy does not equate to possession, constructive or actual.

> (1) The testator indicated an intent to change his will to provide a described benefit for plaintiff;
>
> (2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will;
>
> (3) The defendant was successful in preventing the execution of a new will; and,
>
> (4) But for the defendant's conduct, the testator would have changed his will[.]

*Cardenas v. Schober*, 783 A.2d 317, 326 (Pa. Super. 2001); *Hollywood v. First National Bank of Palmerton*, 859 A.2d 472, 477-78 (Pa. Super. 2004).

> By her own admission, [Appellant] admits that her facts do "not match the elements" for this claim. *Brief in Opposition to Motion for Judgment on the Pleadings* ([Appellant]), pg. 6. Instead, she urges this Court to venture where no other Pennsylvania jurist has gone. That is open the umbrella of civil wrongs and allow her facts to rest underneath its protective shield. This Court will not take such action. As reflected in the order accompanying this opinion, judgment on the pleadings will be granted on Count Five of the Amended Complaint as recovery is simply not possible.

Orphans' Court Opinion, 10/12/17, at 2-6.

After review, we agree with the orphan' court's analysis. Appellant was never in possession of the assets she alleged were wrongfully transferred, and therefore, there can be no claim for conversion. **See Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 275 (Pa. Super. 2016) (a plaintiff has a cause of action in conversion if she had actual or constructive possession of a chattel at the time of alleged conversion). Appellant had merely an expectancy in Mother's property, and we conclude that an expectancy does

not suffice to establish constructive possession. *See Hutnik*, 535 A.2d at 155 (defining an expectancy as an inchoate hope to obtain the property of another having no attribute of property, no appreciable value, and the interest to which it relates is non-existent and may never exist). Moreover, because we agree that Appellant cannot establish conversion, there can be no civil conspiracy. *See Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. 2013) ("Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong.") (citation omitted).

Finally, Appellant failed to establish the elements of intentional interference with an inheritance as set forth in *Cardenas v. Schober*, 783 A.2d 317, 326 (Pa. Super. 2001). We decline Appellant's invitation to adopt a different rule because we are bound by the prior decisions of this Court. *Lower Paxton Tp. v. U.S. Fidelity and Guar. Co.*, 557 A.2d 393, 401 (Pa. Super. 1989); *see also Eckman v. Erie Ins. Exchange*, 21 A.3d 1203, 1209 (Pa. Super. 2011) ("Any … change in the law is beyond the mandate of this Court. This Court is … bound by existing precedent under the doctrine of *stare decisis*.") (internal citation and quotation marks omitted).

For the reasons set forth above, we conclude that Appellant is due no relief. Accordingly, we affirm the October 12, 2017 order granting judgment on the pleadings in favor of Appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/24/2019</u>