**Mahoney Realty Group, Inc. v. Lamm**

*Andrew L. Miller,* for plaintiff.

*Michael S. Silberman,* for defendants Lamm Realty Group, LLC, Parliament Consulting, Ferry Development General, LLC, Edward Alan Webber, Insite Realty Advisors, LLC, Deep Sea-GP, LLC and Harvey Lamm

*Edward S. Robson,* for defendant Edward Alan Webber

*Oliver D. Griffin* and *Joseph L. Doherty,* for defendant Davin Lamm

SNITE, *J.,* February 14, 2013—On January 8, 2013 this court ruled on a motion for summary judgment in the above captioned matter. By order dated January 8, 2013 this court granted the summary judgment motion of defendants in its entirety and entered judgment in favor of defendants and against plaintiff with respect to claims asserted by plaintiff in the third amended complaint. On February 6, 2013 this court received notice that defendants had filed an appeal to the Superior Court of Pennsylvania from this court's January 8, 2013 order.

## DISCUSSION

This court adopts, as its opinion on appeal, the order and opinion dated January 8, 2013, which sets forth this court's reasoning. This opinion is incorporated herein by reference. This court asks that the January 8, 2013 order be affirmed.

## I. PROCEDURAL HISTORY

Defendants Davin Lamm and Edward Alan Webber ("Webber"), individually and d/b/a Deep Sea Associates, LP, Ferry Development, LP, Insite Realty Advisors, LLC, Parliament Consulting, and Lamm Realty Group, LLC,

Harvey Lamm, Deep Sea-GP, LLC, d/b/a Deep Sea Associates, LP, Ferry Development General, LLC d/b/a Ferry Development, LP, Insite Realty Advisors, LLC, Parliament Consulting and Lamm Realty Group, LLC, filed a motion for summary judgment[1] on all causes of action in this lawsuit, that claims, breach of contract[2], fraud[3], civil conspiracy[4], unjust enrichment[5], usurpation of business opportunity[6] and conversion[7]. Plaintiff filed a motion for partial-summary judgment concerning liability only.

## II. FACTUAL HISTORY

### A. Introduction.

This case hinges on whether or not defendants were engaged in [permitted] "other business" when they sold and/or leased properties belonging to Ferry and Deep Sea, LP, without paying plaintiff commissions thereon.

---

1. This opinion addresses defendants' summary judgment motion, because in ruling that there is no issue of material fact as to all of plaintiff's claims, plaintiff's motion for partial summary judgment thereby becomes moot. Furthermore, both parties' arguments in their motions in opposition predominantly track their affirmative arguments requesting summary judgment. Accordingly, in addition to plaintiffs arguments being moot, it would also be duplicative to address them.

2. Count I, breach of contract, is brought against Davin Lamm and count II, breach of contract, is brought against Webber.

3. Count III, fraud, is brought against Davin Lamm and Webber.

4. Count IV, civil conspiracy, is brought against Davin Lamm, Weber, Deep Sea-Gp, LLC, d/ba Deep Sea Assoc., LP, Ferry Development General, LLC, d/ba/ Ferry Development, LP, Insite realty Advisors, LLC, Parliament Consulting, Lamm Realty Group, LLC and Harvey Lamm.

5. Count V, unjust enrichment, is brought against the same listed defendants in n3.

6. Count VI, usurpation of a business opportunity, is brought against the same listed defendants in n3.

7. Count VII, conversion, is brought against Davin Lamm and Weber.

Plaintiff's claims in this action arise from a business relationship between itself, Mahoney Realtor Group ("MRG") and the [primary[8]] individual defendants, Davin Lamm and Webber.

Plaintiff argues that provisions of the independent contract agreement ("agreement") required defendants to pay commissions to MRG on properties that were purchased or leased by Ferry Development, LP ("Ferry Dev., LP") and Deep Sea Associates LP ("Deep Sea, LP") through their managing Limited Partner, Davin Lamm. Defendants argue that MRG was not due commission unless (1) defendants received commission or brokerage fees for the transactions or (2) defendants entered into a listing agreement with MRG for the property.

1. Parties and Properties.

Plaintiff, MRG, is a licensed real estate brokerage firm located in Ardmore, Pennsylvania. The primary individual defendants, Davin Lamm and Webber, were real estate agents at MRG. Davin Lamm, MRG's vice president, was an agent of MRG's from on or about 1999 until August 24, 2009. Webber was hired originally in 2007 as an unpaid intern. Webber was hired as a real estate agent in 2008, upon completion of college and licensing as a real estate agent in Pennsylvania. Webber was also terminated on August 24, 2009 from MRG. As stated, individual defendant Harvey Lamm's only relation to this case is as

---

8. The only connection the other captioned defendants have to MRG, in relation to this lawsuit, is through either Davin Lamm and/or Webber. Accordingly, the relationship which this lawsuit is premised on began with Davin Lamm and Webber.

a member of Ferry Gen., LLC and as a limited partner in Ferry Dev., LP.

Deep Sea GP, LLC ("Deep Sea, LLC") is a Pennsylvania limited liability corporation and the general partner of Deep Sea, LP. Davin Lamm is managing member of Deep Sea, LLC and a limited partner of Deep Sea, LP. Ferry Development General, LLC ("Ferry Gen., LLC") is a Pennsylvania limited liability corporation and the general partner of Ferry Dev., LP. Davin Lamm is a managing member and Harvey Lamm a member of Ferry Gen., LLC. Davin Lamm and Harvey Lamm are limited partners of Ferry Dev., LP.

Davin Lamm negotiated the following purchases and leases of Deep Sea, LP in his capacity as a member of the general partner of the owner, Deep Sea, LLC. Deep Sea, LP purchased 3156 and 3162-64 Kensington Avenue in or around June, 2004 and February 17, 2006. The properties were purchased for a sale price of $325,000 and $150,000. A brokerage fee for each property was paid only to the seller's broker, at a five (5) and three (3) percent fee. According to the settlement statement, a $4,500.00 commission was paid to MRG for the 3162-64 property[9]. Deep Sea, LP leased 3156 Kensington Avenue to three tenants: Hispanic Community Services, Foot Locker, and Esperanza Health Center. The leases were executed on February 15, 2005, July 19, 2005 and May 2, 2007

---

9. MRG has not plead a third-party beneficiary claim and perhaps for good reason. At least with respect to the record, there are insufficient facts to give rise to an inference that MRG would be an intended third-party beneficiary.

respectively. The only broker to receive any commission was Foot Locker's broker, NIA Hiffman, in the amount of $31,000.00.

Davin Lamm negotiated the following purchases and leases of Ferry Dev., LP in his capacity as a member of the General Partner of the owner. Ferry Dev., LP purchased 3000 Grays Ferry Avenue and 3000 Oxford Street on or about July 17, 2007. The properties were purchased for $1.45 million and $1.925 million respectively. No brokerage fees were paid to any broker in either transaction. Ferry Dev., LP leased 3000 Grays Ferry Avenue to three tenants: Rite Aid, Gray's Ferry Community Counseling Service, Inc., and Philadelphia Consortium for Community Services, LLC. No brokerage commissions were paid on these leases.

Parliament Consulting, LLC ("Parliament, LLC") is a Pennsylvania limited liability company which was started by Webber in order to further his unpaid[10], marketing intern project for the leaseholds of the properties held by Deep Sea, LP and Ferry Dev., LP. Parliament, and therefore Webber, received no commission or fees in the performance of these marketing endeavors. Insight Realty Advisors, LLC, ("Insight, LLC") is a Delaware limited liability company, which marketed and/or advertised some of the Greys Ferry Avenue properties. Davin Lamm is a shareholder of Insight, LLC.

---

10. There is no evidence of record to refute Webber and Davin Lamm's assertion that the only *consideration* Webber received for his marketing efforts on behalf of Davin Lamm's business' properties was experience and rapport.

Lamm Realty Group, LLC is a Pennsylvania limited liability company, alleged to be licensed as a real estate brokerage in the third amended complaint. There is no further reference to LRG after the third amended complaint.

2. Agreement and Use of MRG's Facilities.

MRG bases its claims only on the independent contractor agreement between itself and Davin Lamm[11] and any agency relationship that arose from said agreement. The record is clear that MRG had no oral or written listing agreements with respect to these properties on which it seeks to secure a commission.

It is undisputed that both Webber and Davin Lamm utilized MRG's facilities[12] in furtherance of some or all of their business activities. Their use of MRG's facilities and business property included use of MRG's computers, printers, internet [black and white] copier(s), standard forms, mailing address, listing database and a very limited use of MRG's administrative assistant[13]. Additionally, Davin Lamm, and Webber used MRG's trademark, email address, and other like commercial identifiers in

11. There is no written agreement between Webber and MRG. Both parties agree that MRG and Webber were under an oral agreement that was the same or materially the same as the written agreement between Davin Lamm and MRG. For the purposes of summary judgment this Court assumes this to be true.

12. It is disputed whether Mr. Mahoney, MRG's owner, was aware of the extent of defendants' use. However, since MRG was unable to prove damages, infra, whether or not he consented to said use is of little importance.

13. On occasion, mail sent to MRG's address in the name of one of the defendant companies was given to Daven Lamm and/or Webber by the administrative assistant, Karen Santoro.

commerce. It is unclear whether said use was known and permitted by MRG's owner, Mr. Mahoney.

3. Expert Report.

MRG obtained an expert report from Attorney Heller, who, in addition to having a law license also has a real estate license. Mr. Heller offered his opinion in respect to the following question[14] posed to him:

Q: "Did the fact that no commission was paid to MRG for the properties purchased by Deep Sea and Ferry, and no commission was paid to MRG by any party in the lease of these properties, result in additional value which benefitted Mr. Lamm?

A: "The fact that no commission was paid on these transactions almost certainly allowed Mr. Lamm's partnerships to obtain additional value in the form of either a lower price and increased rent at more favorable terms for the leases obtained... The commission payable by parties in a commercial [sale] transaction can vary from three (3) percent to ten (10) percent... If a commercial tenant comes to a landlord without a broker, that tenant is less expensive and hence, is more attractive than one who is represented." (page 3).

---

14. The second question posed, at least as answered by attorney He - ler, opined on Mr. Heller's analysis of real estate law. Stating what the law is and what the law is not is exclusively in the province of the court. It is than the court's duty to explain the law and its relevance to the jury, so that it may analyze the facts in accord therewith. Accordingly, Mr. Heller's opinion as to the relevant law is not helpful to the trier of fact, since they would be informed on applicable law by this court prior to deliberation.

Mr. Heller did not explain how the value of the services used by defendants, such as the use of the computer, printer, internet, [black and white] copiers, listing database and administrative assistant, should be accurately calculated. Mr. Heller did not explain how the value of the trademarks and "good will" associated therewith should be accurately calculated. Neither the record nor Mr. Heller identifies a single, specific tenant obtained exclusively through the use of MRG's facilities or under any exclusive listing agreement with MRG.

## III. LEGAL STANDARD

This court finds that the above captioned defendants are entitled to summary judgment as a matter of law because there is no issue of material fact once the questions of legal interpretation are disposed of by the court.

The standard for summary judgment in Pennsylvania is set forth in Pa.R.C.P. 1035.2 as follows:

"After the relevant pleadings are closed, but within such a time as to not unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law...

(2) if, after the completion of discovery relevant to the motion, including production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury."

## IV. DISCUSSION:

A. Introduction.

Summary Judgment for the defendants' is appropriate because plaintiff has failed to produce any evidence on damages. *Wallace v. Klehr, Harrison, Harvey, Branzburg & Ellers LLP*, 2011 Phila. Ct. Com. Pl. LEXIS 374 (December 20, 2011). Here, MRG must produce evidence of: 1) either a contractual or a societal duty owed by defendants to MRG, 2) defendants breach of that duty, and 3) damages MRG suffered as a result of that breach. *Wallace v. Klehr, Harrison, Harvey, Branzburg & Ellers LLP*, 2011 Phila. Ct. Com. Pl. LEXIS 374 (December 20, 2011) (citing cases See *Bortz v. Noon*, 556 Pa. 489, 499 (1999) (fraud); *Kituskie v. Corbman*, 552 Pa. 275, 281 (1998) (professional negligence); *Estate of Stetson*, 463 Pa. 64, 84 (1975) (breach of fiduciary duty); *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. 2003) (breach of contract).

First, as a matter of law, the court finds that the agreement between the parties does not preclude individual agents from selling, buying or leasing their own property where there is no listing agreement and they receive no commission on behalf of their broker. Based on this finding, the court finds that the plaintiff failed to show a breach of any contractual duty[15].

---

15. With respect to paragraph 5(g), which prohibits the use of MRG's "trade dress", the court finds that there is sufficient evidence to show defendants breached this provision by misappropriating some or all of MRG's trade-dress. Nevertheless, plaintiffs failed to aver any facts relating to damages for this breach.

Second, the court finds that the plaintiff has still failed to prove damages; the only evidence on damages offered a means of calculating damages for which plaintiff is not entitled to collect.

**B. The Agreement Does Not Give Plaintiff an Automatic Interest in Commissions for Deep Sea, LP and Ferry Dev., LP's Properties.**

Based upon the language of the agreement at issue, this court has determined that defendants had an unfettered right to buy, sell and lease any properties owned by them or their companies, so long as they did not receive any commission or fee. Absent a listing agreement on these properties, there is simply no clause that precludes defendants from acting on their own properties in furtherance of developing their businesses in the market of business acquisition and leasing, a separate market from real estate brokerage.

1. Under Paragraph 5(a), Agreement, in relevant part, it provides as follows:

"Nothing herein [or any other provision] shall be construed to give [MRG] any right or authority to direct [Davin Lamm and Weber] to...restrict [Davin Lamm's and Webber's] business geographically, or to prohibit [Davin Lamm and Webber] from engaging in any other lawful business or commercial activity, profession, occupation or the like". Para. 5(a).

The court interprets this provision to permit defendants, Davin Lamm and Webber, to engage in any business activity that is not real estate brokerage in its ordinary course.

Thus, this provision would be violated if Davin Lamm and/or Webber accepted commissions as a brokerage, but not if they simply sold property, sans broker, as any other non-broker would also be free to do.

Given the court's interpretation, defendants' activities constituted real estate acquisition and leasing, not real estate brokerage. The defendants were acting as principals, who ordinarily would be the *clients* of plaintiff, not his *competitors*. Accordingly, they were engaging in "other lawful business or commercial activity..."

2. Under Paragraphs 5(a), 5(h) and 2(c) of the Agreement, in relevant part it provides:

"Associate agrees to obtain all listings and to close all lease and/or sales in the name of Broker for the benefit and use of Broker..." and

"Associate shall have no authority to bind, obligate or commit Broker by any promise or representation, unless Associate secures prior written authorization in connection with a specific transaction." Para. 5(h) and

"In no event shall associate charge less than the commission or fee established by Broker..." Para. 2(c).

This court finds that the above language only binds defendants once plaintiff has a vested interest in the sale or lease in one of Davin Lamm's properties. Paragraph 5(g) of the agreement, which imports RELRA[16] into said agreement, mandates this conclusion. Under RELRA, written "listing

---

16. "Associate and broker agree to perform their business in acco - dance with [RELRA]."

agreements" are a prerequisite to entitlement of real estate brokerage fees, commissions or other compensation under the Pennsylvania Real Estate Licensing and Registration Act ("RELRA"). 63 P.S. §455.101, et seq.[17]

It is undisputed that there were no listing agreements entitling plaintiff to any commissions with respect to the properties at issue. Since defendants had no duty to pay commissions on the transactions, there was no breach of contract.

3. Paragraph 5(g) of the Agreement, in relevant part provides as follows:

"Associate specifically may not use materials or letterheads showing Broker's name, trademark or trademark for correspondence or communication in associate's personal business in which Broker is not involved. Associate shall not make any untrue statement of material fact or fail to state a material fact necessary to make the statement not misleading to clients or customers."

The court finds the above language to preclude two different activities: The first clause refers to the associates interaction with non-MRG customers. This clause precludes the associate from misappropriating plaintiffs "trade dress". For instance, using plaintiffs source-identifying email address, letterhead and the like would breach the

---

17. Under §455.606a(b)(1) of RELRA, a real estate broker is "...not entitled to recover a fee, commission or other valuable consideration in the absence of...a signed agreement" setting forth the "...nature of the service and the fee to be charged..." by the broker.

duty owed to MRG under this clause. The second clause refers to associates interaction with MRG customers. This clause precludes the associate from, inter alia, fraudulently inducing a customer into a transaction while said associate was acting as MRG's agent. Accordingly, it has no bearing on any lies defendants may wish to tell outside their role as an agent of MRG.

Given the court's interpretation of the above clause, it does find that there is evidence to show that defendants breached their duty owed to plaintiff under the first, but not the second clause. Notwithstanding this, plaintiffs breach of contract action fails, because there is not a single fact as to the damages incurred as a consequence of the averred trademark infringement.

C. Plaintiff has failed to prove any damages resulted from any averred breach of duty owed to MRG.

Plaintiff's fraud, unjust enrichment, usurpation of business opportunity and conversion causes of action recasts their primary breach of contract argument[18] in tort. First, plaintiffs fraud count avers that because Davin Lamm and Webber were real estate agents pursuant to the agreement, they had a duty[19] to disclose their conduct to MRG. Second, the plaintiffs usurpation of business opportunity count avers that because Davin Lamm and Webber were real estate agents pursuant to the agreement

18. For purposes of this opinion, the court assumes, but does not d - cide, that most or all of these causes of action would also fail under the "gist of the action doctrine".

19. The court treats the fraud claim as a breach of fiduciary duty claim as well.

and because they used plaintiff's facilities, they had a duty to bring all business opportunities to MRG. Third, the plaintiff's conversion claim avers that because defendants were real estate agents under the agreement, MRG had a vested interest in commissions that should have been derived from these properties. Fourth, the plaintiffs unjust enrichment claim avers that the use of plaintiffs property conferred an unjust benefit on defendants, which defendants appreciated and accordingly plaintiff should be compensated. Finally, plaintiffs civil conspiracy claim is based on a conspiracy by two or more defendants to commit one or more of the above torts.

1. Defendants did not commit fraud.

To survive summary judgment on plaintiffs fraud cause of action, there must be sufficient facts to show: (1) misrepresentation, (2) fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act (4) justifiable reliance, and (5) damage proximately caused. *Delahanty v. First Pa. Bank*, N.A. 464 A.2d 1243, 1245 (Pa.Super. 1983).

Plaintiff's fraud claim fails because defendants, Davin Lamm and Webber, did not misrepresent any statement of material fact. Plaintiff argues that defendants owed MRG a duty to disclose their business ventures because they were real estate agents of MRG. This argument is premised on the incorrect assumption that defendants were prohibited from selling or leasing their companies' property without doing so through the brokerage of MRG. As stated supra, the scope of their agency, as defined by paragraph 5(a)

of the agreement, does not include this type of conduct. Accordingly, it was not the type of omission that could establish a fraud cause of action.

Furthermore, to the extent that their allegedly undisclosed use of plaintiff's facilities and trademark could conceivably constitute a misrepresentation, plaintiff again has not averred a single fact that could support a claim for damages. Noon, 556 Pa. at *id.* Without a listing agreement or some vested interest in a commission, there is no causal nexus between the use of plaintiff's facilities and trade dress and potentially hundreds of thousands of dollars in commissions.

2. Defendants did not breach a fiduciary duty or usurp a business opportunity.

Several of plaintiff's usurpation of a business opportunity claims could be construed as breach of fiduciary duty, notwithstanding its pleading to the contrary. Accordingly the two causes of action will be disposed of together.

To survive summary judgment on breach of fiduciary duty, plaintiff must aver sufficient evidence to support the following elements: (1) defendants owed MRG a recognized fiduciary duty, (2) defendants breached that duty and (3) thereby caused damages. *Reading Radio, Inc. v. Fink*, 8333 A.2d 199 (Pa. Super. 2003). Similarly, an agent usurps a business opportunity if "he breaches his duty not to compete with his principal concerning the subject matter of his agency..." *Levy and Surrick v. Surrick*, 362 Pa. Super. 510, 524 (1987).

Plaintiff has failed to aver facts that would show any breach of duty caused plaintiff damages of the type complained of. Defendants had no duty to sell or lease their companies' properties through MRG's brokerage. In the same vein, defendants were not in competition with MRG when they sold or leased these properties. Defendants' only contact with plaintiffs market, the market of real estate brokerage, was as a potential client who ultimately found brokerage services unnecessary. Therefore, the fact that plaintiff would have been richer, had defendants chosen to use his brokerage services, does not constitute damages for either breach of fiduciary duty or usurpation of a business opportunity.

3. Defendants did not convert Plaintiffs property.

To survive summary judgment, plaintiff must aver sufficient facts to show that there was: (1) an unlawful deprivation, (2) with the chattel of plaintiff and (3) [plaintiff] had actual or constructive possession over said chattel. *McKeeman v. Corestates Bank*, N.A. 2000 Pa. Super 117 (Pa. Super. Ct. 2000); *Eisenhauer v. Clocktower Ass'n*, 582 A.2d 33, 36 (1990). Commissions and money derived during the course of an agency can be a chattel. E.g., *Ins. Adjustment Bureau, Inc. v. Allsate Ins. Co.*, 860 A.2d 1038, 1043 (Pa. Super. 2004).

To make out a cause of action for conversion under an agency theory however, plaintiffs must aver facts that would show that the commissions were obtained within the scope of defendants' agency. Defendants were not working as agents of MRG, but as agents of their

respective companies, when they purchased and leased their companies' properties. To the extent that they utilized MRG's facilities to effectuate their goals, that could be unjust enrichment, not conversion. *Kribbs v. Jackson*, 129 A.2d 490, 618 (1957). Accordingly, as with all the previous tort causes of action, plaintiff failed to show damages for the actual harm caused.

4. Defendants were unjustly enriched, but Plaintiff failed to show an accurate means of calculating damages.

To survive summary judgment for unjust enrichment, plaintiff must show: "(1) MRG conferred benefit defendants, (2) Defendants appreciated such benefits and (3) acceptance & retention of such benefits under circumstances that it would be inequitable for defendants to retain the benefit without payment of value." *Northeast Fence and Iron Works, Inc. v. Murphy Ouigley Co.*, 933 A.2d 664, 667 (Pa. Super. 2007) (citing *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006).

It is clear that plaintiff conferred a value on defendants who were allowed to use MRG's facilities and trade dress. Defendants appreciated this value as it furthered their separate business ventures without the ordinary start-up costs. However, plaintiff failed to aver sufficient facts to support its unjust enrichment cause of action because the only damages relate to commissions, not the "value" of the benefit conferred-the use of facilities and trade dress.

5. Defendants did not commit civil conspiracy because there is no independent tortious cause of action averred.

With respect to plaintiffs civil conspiracy cause of action, plaintiff were required to aver facts for each of the following: (1) a combination of two or more persons acting with a common purpose, to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act in furtherance, and (3) damages." *Goldstein v. Phillip Morris*, 854 A.2d 585, 590 (Pa. Super. 2004).

Here, there is no question of material fact with respect to any of the above elements. First, defendants did not conspire to commit any unlawful act (see supra). Second, given plaintiff's failure to show the first element, there of course can be no overt act in furtherance. Finally, plaintiff's failed to show damages since their expert only testified to commission fees. Here, plaintiff was not owed commissions.

## V. CONCLUSION

Defendants did not breach any duty owed to plaintiff when they purchased and leased properties without paying a commission to plaintiff because plaintiff had no legal interest in the receipt of a commission. Defendants did breach paragraph 5(g) of the agreement when they used plaintiffs trade dress in commerce, however, plaintiff has offered no [sic "on" in original opinion] evidence on the element of damages.

Plaintiff's arguments to the contrary are unpersuasive; they merely attempt [sic "attempts" in original opinion] to re-cast an unjust enrichment claim as many other causes of action. Nonetheless, plaintiff failed to provide a single fact

from which a fact finder could measure damages under an unjust enrichment claim. Accordingly, "[t]he court cannot allow the jury to speculate" as to an appropriate amount of damages, if any, "without any evidence upon which to base its decision." *Wallace*, 2011 Phila. Ct. Com. Pl. LEXIS 374.